Baker v. Clepper.

## Y. BAKER AND OTHERS v. LEM. G. CLEPPER.

Where the exceptions to the answers and amended answers of defendant were not presented in the due order of pleading, and were intermingled in the replication with allegations of facts, so that it was difficult for the court below to act upon the one without reference to the other; *held*, that, though objectionable, the court below was fully justified in overruling the exceptions.

Where numerous and complicated issues raised by the pleadings are fairly submitted to the jury, and there is evidence introduced to support the verdict, it must be held to be conclusive.

An excess of levy and gross inadequacy of the price for which land is sold at execution sale are questions properly to be submitted to the jury.

Inadequacy of price at a sale made under process of law is not sufficient, without additional circumstances, to invalidate the sale.

*Held*, that the jury were properly instructed that they, in determining whether a levy on land was excessive, and whether the price at which it was sold under execution was inadequate, should take into consideration the incumbrances, if any, upon the land, and the embarrassments and suspicions that have been thrown around the sale by the defendant in execution.

It has been repeatedly decided by this court that the title of the mortgagor of real estate can be sold under execution. (Wright v. Henderson, 12 Tex. R., 43.)

The effect of a mortgage to secure the purchase money executed simultaneously with the deed to the vendee, is that the legal title remains with the mortgagee or vendor of the land; but this in no manner prevents the interest of the mortgagor from being levied upon and sold.

The failure of a sheriff to make to a purchaser at execution sale a deed for the land, and the fact that the purchaser did not pay the amount of the bid to the sheriff immediately, will not vitiate the right or title of the purchaser acquired under the sale; nor does the fact that the defendant in execution tendered the amount called for in the execution and costs to the sheriff before the purchaser paid the amount bid, or before the sheriff executed his deed, in any manner affect the right or title of the purchaser.

---

---

APPEAL from Montgomery.    Tried below before the Hon. Peter W. Gray.

This was a suit brought by appellant, Y. Baker, against appellee, Lem. G. Clepper, in the ordinary form of trespass to try title and for damages, to recover six hundred and forty acres of land.

Jonathan T. Pounds owned the six hundred and forty acres in controversy; also, one hundred and sixty acres adjoining, which he claimed as a pre-emption. He owned, also, a small steam-mill, situated upon the pre-emption. In 1855, he entered into partnership with Y. Baker to build and run a large steam-mill. On the 29th day of November, 1855, Pounds sold the 640 acres in litigation to Y. Baker, subject to a mortgage in favor of W. F. Case for $450. At the Fall Term, 1856, Pounds instituted proceedings in the District Court of Montgomery county to have the partnership dissolved, for the appointment of a receiver, a sale of the partnership assets, and an application of the proceeds to the payment of the partnership liabilities. A decree was rendered, substantially as prayed for. Under this decree, both of the tracts were sold by the receiver, and Lem. G. Clepper became the purchaser. On the 3d day of February, 1857, the receiver made a deed to Clepper for both tracts of land, including the steam-mill and fixtures. At the Fall Term, 1857, Y. Baker, in the same suit, filed a cross-bill, making Clepper a party, and praying that the receiver's sale be set aside, and the deed to Clepper declared null and void. The court decreed that the sale be set aside, except the four acres upon which the mill was situated—ordered the deed to Clepper for both tracts to be given up and cancelled, and a deed to be made to Clepper for the four acres, including the mill. On the 17th May, 1857, the receiver made a deed for the four acres to Clepper. On the 28th day of February, 1857, one W. C. Hooker recovered a judgment in a justice's court of Montgomery county against Y. Baker for the sum of twelve dollars and sixteen cents, and the justice issued an execution on this judgment. On the 21st day of April, 1857, the sheriff levied upon the 640 acres in controversy, as the property of Baker, to satisfy the execution. On the 5th day of May, 1857, he sold

the same, and Clepper became the purchaser. The return on this execution is as follows:

"By virtue of this execution I have this day levied upon all the right, title and interest of Yarborough Baker to six hundred and forty acres of land lying in Montgomery county, about eight miles north of Montgomery town, known as the land granted to Theophilus Henry and Uriah F. Case, and transferred by them to Uriah F. Case, and from said Case to Pound, and from said J. T. Pound to Y. Baker.          A. W. MORRIS."

April 21, 1857.

"After legal notice by me posted, I did, on the 5th day of May, the first Tuesday, sell at auction the six hundred and forty acres of land levied upon by virtue of this execution, when and where Lem. G. Clepper bid sixteen dollars; and it being the highest and best bid, it was struck off to him.

May 5, 1857.          A. W. MORRIS, S. M. C."

On the 2d day of November, 1857, Y. Baker brought this suit against Clepper, to try the title to the 640 acres of land, to have the deed from the sheriff to Clepper delivered up and cancelled, and for damages. During the progress of the suit, N. Hart Davis and brother were made parties defendant to the proceedings.

The other facts are sufficiently indicated in the opinion of the court. There was a verdict for Clepper, and judgment rendered accordingly; motion for new trial overruled, and appeal prosecuted by Baker, Davis and brother.

*N. Hart Davis,* for appellants.—We contend that the defendant cannot hold under the sheriff's deed. The land at and before the time of the sheriff's deed was in the hands of the receiver. (Wiswall v. Sampson, 14 Howard Rep., 52; 2 Story's Eq. J., § 833, and note.) The land at and before that time was claimed by Clepper, under the receiver's deed, illegally and fraudulently made and acquired, and afterwards set aside by the court. (James v. Fulcrod, 5 Tex. Rep., page 512; 18 Id., page 377.) The land at the time was under a mortgage from Baker to Pounds, his vendor, for the whole of the purchase money. (5 Vesey J., 845; 2 Johns. Ch. Rep., 1, 23.) The land was not levied upon and

advertised twenty days before the day of sale, which fact Clepper well knew before he paid the purchase money and took the sheriff's deed. (1 Greenleaf Ev., § 40; Moore v. Brown, 11 Howard Rep., 414; 11 Id., 309, 310; 4 Martin's Lou. Rep., 242; Doe v. Smith, 4 Blackford Ind. Rep., 228.) Clepper did not comply with his bid at the sheriff's sale within a legal or reasonable time thereafter, nor until the execution had run out of date, nor until the purchase at the receiver's sale had been set aside. (Catlin v. Jackson, 8 Johns. Rep., 550; Chapman v. Howard, 8 Blackf. Rep., 82.) The levy was excessive. (Freeman v. Wilson, 6 Johns. Ch. Rep., 411; Byers v. Surett, 19 Howard Rep., 303; Ballard v. Anderson, 18 Tex. Rep., 377; 1 Carter's Ind. Rep., 575; 4 Blackf. Ind., 228.) The consideration given by Clepper was grossly inadequate. (Burch v. Smith, 15 Tex. Rep., 219; Teas v. McDowell, 13 Id., 349; Briscoe v. Bronaugh, 1 Id., 337; Allen v. Stephens, 18 Id., 672; 6 Johns. Ch. Rep., 411; 4 Id., 118; Boyd v. Dunlap, 1 Johns. Ch. Rep., 337; 19 Howard Rep., 303.) Before Clepper paid the purchase money or received the sheriff's deed Baker offered to pay the sheriff the amount of the execution. There was no appraisement of the land at the Sheriff's sale, nor was the execution endorsed "sale without appraisement."

*Clepper & Jones, Porter & Palmer*, for appellee.

MOORE, J. The manner in which appellants presented their exceptions to appellee's answer, if it was objectionable, fully justified the court below in overruling them. The exceptions were not presented in the due order of pleading. They were intermingled in the replication with averments and allegations of facts, so that it would have been very difficult, if not impossible, for the court to have acted upon the one without reference to the other. The replication, indeed, seems rather to import that, in view of the facts it alleges, appellee had no sufficient defence than as questioning its sufficiency when tested by the averments in the answer. If the exceptions, however, had been properly taken, there appears

to be no reason why the court should have held otherwise than as it did.

The numerous and complicated issues that were raised by the pleadings were fully and fairly submitted to the jury. And as there was evidence to support their verdict, it must be held to be conclusive.

The appellees insist that the land was in the hands of the receiver at the date of the sheriff's levy, and therefore not subject to sale under execution; and, also, that the sale that had been made of it by the receiver was illegal and void, because the order under which the receiver acted did not include the land. These positions are contradictory, and one or the other of them must be erroneous. The record of the case in which the receiver was appointed conclusively shows that he had no authority to take the land into possession, or to sell it; and for this reason the court in that case, upon the application of appellant, set aside the sale made by the receiver. And we think the court correctly held, that its action in that case on this question was conclusive upon the parties in this suit; and that appellee could not therefore hold or claim the land under or by virtue of his purchase of it from the receiver. But as the land was not subject to sale by the receiver, and he had properly no connection with or authority over it, it remained, notwithstanding his action, subject to levy and sale in satisfaction of appellant's debts. Nor could the fact that appellee had purchased and claimed it under the illegal sale by the receiver deprive him of the privilege, in common with all other citizens, of purchasing it, if properly sold under a judgment and execution. The fact of the previous sale by the receiver no doubt was calculated to embarrass its sale under the execution; and as the receiver's sale had not then been pronounced illegal by the court, appellee had an advantage over other bidders; but the verdict of the jury under the charge forbids us from concluding that this was occasioned by any wrongful or fraudulent act on his part. On the other hand, the testimony conclusively shows that if any injury has resulted to appellant by the previous illegal sale of the land by the receiver, it was brought about by his own act in pointing it out and causing it to be sold by him.

The question with reference to the excess of the levy, and the gross inadequacy of the price for which the land was sold, was properly submitted to the jury. In the case of Allen v. Stephanes, 18 Tex., 658, it is said: "The rule laid down in the charge of the court, and as it is generally expressed, is, that inadequacy of price at a sale made under process of law is not sufficient without additional circumstances to invalidate the sale." (11 Johns., 566; 6 Watts, 140; 3 Yeates, 405.) The charge of the court was as favorable to appellant as, under the authority of this case, he could have asked it. The jury were properly instructed, nevertheless, that they should, in determining whether the levy was excessive, and the price at which the land was sold inadequate, consider what incumbrances, if any, there were upon it, and the embarrassments and suspicions that had been thrown around the title by appellant. Although the sale was for a mere nominal consideration in comparison with the value of the land sold, we cannot say that the finding of the jury in this respect is not strictly correct. The testimony by no means leaves it free from doubt whether the land is not subject to incumbrances of a greater amount than its value.

It has been repeatedly decided by this court that the title of the mortgagor of real estate could be sold under execution. (Wright v. Henderson, 12 Tex., 43.) The effect of a mortgage to secure the purchase money, executed simultaneously with the deed to the vendee, is, that the legal title remains with the mortgagee or vendor of the land. (Dunlap v. Wright, 11 Tex., 597; Ballard v. Anderson, 18 Tex., 377.) But we cannot see that this in any manner prevents the interest of the mortgagor from being levied upon and sold. He has the same interest in the land as a purchaser who has a bond for title upon the payment of the purchase money. It is generally admitted, we believe, that the interest of such a party may, with us, be sold under execution.

The evidence does not authorize the conclusion that appellee was cognizant, previous to his purchase of it, that the land had not been levied upon and regularly advertised twenty days prior to its sale, if such was the fact. The effort of appellant to show that the execution was levied upon the land at appellee's instance en-

tirely failed. Under these circumstances, if there had been neither a levy or advertisement, it has been held that it would not affect his title. The recitals of the sheriff's return upon the execution, although to be taken as *prima facie* correct, were not conclusive. The return also recited that legal notice had been given of the sale; there was, therefore, a discrepancy in the recitals. The sheriff also testified that he gave the usual notice. Under these circumstances, we do not think that there is error in the conclusion that the sheriff did not violate his duty as a public officer. In Frazier v. Moore, 11 Tex., 755, the sheriff's sale purported to be made on the 10th of November, 1845, whereas, the deed from the sheriff was dated November 3d, 1845; yet, it was held that the deed was properly admitted, the jury being at liberty to infer a mistake in the date.

The failure of the sheriff to make appellee a deed, and the fact that he did not pay the amount of his bid to the sheriff immediately, did not vitiate his right or title under his purchase. He was not bound to pay the amount of his bid until a deed was executed to him. If he and the sheriff mutually consented to delay the making of the title and payment of the money for a few days or weeks, appellee did not thereby forfeit his purchase. The sheriff, by the delay, may have made himself liable for the amount for which the land was sold, if appellee subsequently failed to comply. But if the sheriff had the money when properly called upon for it by the plaintiff in execution, and the execution was returned by him in due time, we cannot perceive that any other person than the purchaser could complain at the delay in making the deed. That the tender of the amount of the execution to the sheriff subsequently to the sale of the land could not affect the title of the purchaser, is too manifest to require comment. In some cases it has been held, that the payment of the execution would not affect the title of a party who purchased in good faith and in ignorance of the previous payment.

But whether this is so or not, it is beyond doubt that the rights of the purchaser cannot be affected by any act of the defendant in execution subsequent to his purchase.

It is not pretended that the judgment on which the execution

issued was of that class in satisfaction of which appellant was entitled to the benefit of the appraisement law; the failure, therefore, of the clerk to endorse upon the execution, that it should be collected by the sale of property without appraisement, did not injuriously affect him, and certainly can in no way affect a purchaser at a sale made under it. There appearing to be no error in the judgment it is affirmed.

Judgment affirmed.