BOULDS BAKER AND OPHELIA BAKER v. J. I. COMPTON ET AL.

1. JUDGMENT LIEN—STATUTE CONSTRUED.—The act of February 14, 1860, (Paschal's Dig., art. 3962,) which required judgment, before it could operate as a lien, to be filed for registration, took effect from its passage. The act being complete in itself, and clearly indicating the legislative intent that it should be operative from the time of its passage, such intent cannot be defeated by a failure in the act to make a specific designation of the time it should go into effect, as required by a preëxisting statute. (Paschal's Dig., art. 4576.)

2. VENDOR'S LIEN—CONTRACT.—In the opinion of Justice Gould, the decisions of this court show a broad distinction between the rights of a vendor under an absolute deed with warranty which recites the existence of unpaid purchase-money notes, but retains no express lien in terms for their payment, and his rights under a deed which declares that a lien is reserved for unpaid purchase-money. Under the former, the vendor has parted with title, and has only an implied vendor's lien for purchase-money; under the latter, the superior title remains with the vendor, and the deed is the evidence of an executory contract.

3. PURCHASE-MONEY NOTES—ASSIGNEE.—The assignee of a purchase-money note acquires, as such, no possessory right to the land for which it is given.

### ON MOTION FOR REHEARING.

1. DEED, CONSTRUCTION OF.—A deed absolute on its face which recites the existence of unpaid purchase-money notes, but retains no express lien for their payment, conveys the title and right of possession, subject only to the implied lien to secure the payment of the notes; and the fact that the notes stipulate on their face that they are executed "to secure the purchase-money due"* on the land, will not, when such a deed is executed, create an express lien.

APPEAL from Washington. Tried below before the Hon. E. B. Turner.

O. M. Baker and B. Baker brought this suit on the 21st of

* Such was the recital in the notes.

December, 1878, in trespass to try title, against J. L. Compton, E. C. Finney, and others, to recover lot 57 in the city of Brenham, claiming title to and possession of the same on the 1st day of January, 1871.

On the 11th of January, 1879, appellees answered by general demurrer, plea of misjoinder of parties, and plea of not guilty; also special plea alleging that prior to the purchase of said lot by appellants the same had been sold by A. Testard, under whom both parties claimed as a common source, to W. W. Simmons, appellants' vendor, Testard retaining a vendor's lien, which was unpaid and unsatisfied at the date of appellants' purchase; that several years prior to appellants' purchase one Brown recovered a judgment in the District Court of Washington county against said Testard, which became a lien on the lot; that it was sold by the sheriff to C. Ennis to satisfy the Brown judgment; that Ennis was the owner of the Simmons notes given to Testard, which evidenced the lien upon the lot; that appellants had notice of the Brown judgment and Simmons notes; and that appellants, prior to the institution of the suit, had sold the lot to Ennis. Defendants also pleaded three and five years' limitation, possession in good faith, valuable improvements, payment of taxes and non-payment by appellants, and bankruptcy of Boulds Baker.

January 21, 1879, appellants filed a supplemental petition in response, consisting of general denial, plea of not guilty, and a special plea that the Brown judgment never was a lien upon the lot, not having been recorded; that the sheriff's sale to Ennis was null, void, and fraudulent, because the sheriff had no execution empowering him to make the sale; that the Testard lien had been waived and abandoned; that the Simmons notes were barred by the statute of limitations, and a plea of coverture.

January 24, 1879, appellees answered by general denial and plea of not guilty.

April 6, 1860, John Brown recovered a personal judgment in the District Court of Washington county against A. Testard,

who then owned the lot now sued for. Appellants alleged in their supplemental petition that the judgment did not create nor otherwise become a lien upon the lot in dispute when rendered, nor at any time thereafter, because a transcript of said judgment was not recorded in the record book of mortgages of Washington county, nor was the transcript of the judgment ever filed with the clerk of the County Court for record. The appellees introduced no proof to negative this allegation. September 3, 1860, Testard conveyed the lot to W. W. Simmons, who sold it to Ophelia M. Baker on November 15, 1862.

Thus the plaintiffs claimed title to the property under one Simmons. The defendants claimed title under Ennis, who bought at the execution sale under the Brown judgment.

The property in controversy belonged to A. Testard at the date of the judgment, April 6, 1860. A. Testard conveyed it to Simmons by deed with general warranty dated September 3, 1860, for the consideration of $1,500 cash in hand paid, and two notes executed to the Testards by Simmons, one for $1,500, due May 1, 1861, and the other for $1,000, due January 1, 1862, the notes being referred to in the deed. The Testards at the date of the execution of the notes transferred them to C. Ennis, the vendor of the defendants, who owns and holds them, both notes being unpaid. Ennis became the purchaser of the lots in controversy at sheriff's sale on the 5th of January, 1869, and sold one of the lots to the defendant Finney on the 24th of November, 1870, for $500, and the other lot to the defendant Compton for the same price, on the 29th of November, 1870. The defendants Finney and Compton took possession of and improved their lots immediately after their purchase. The plaintiffs claimed title by a conveyance by Simmons to Ophelia M. Baker, dated November 15, 1862.

The cause was submitted to the court for decision, and judgment rendered for appellees.

*McAdoo & Jodon*, for appellants.

I. The court erred in holding that the John Brown judg-

ment, of date April 6, 1860, was a lien upon the lot in controversy, said judgment not having been recorded as required by law. (Paschal's Dig., arts. 3962–3965; Jackson *v.* Butler, 47 Tex., 426; Williams *v.* Murphy, 36 Tex., 176.)

II. The court erred in holding that the sale of said lot 57, under the said John Brown judgment, by the sheriff of Washington county to C. Ennis, on the 5th of January, 1869, was legal, regular, and conveyed title to said lot to C. Ennis.

At the time the execution was levied upon and the sale of the lot made by the sheriff to Ennis, Testard, the defendant in the Brown judgment, had no interest in the lot subject to execution, having sold it to Simmons September 3, 1860, and also transferred the lien notes to Ennis before said levy and sale. (Catlin *v.* Bennatt, 47 Tex., 170.)

III. Appellees were not purchasers in good faith; they had full notice that Ennis had no title to the lot; that the sheriff's sale was fraudulent, null and void, and that the deed from Baker to Ennis conveyed no title; they had notice of appellants' claim to the lot. (Hatchett *v.* Conner, 30 Tex., 113; Rogers *v.* Bracken, 15 Tex., 567; Littleton *v.* Giddings, 47 Tex., 114; Robson *v.* Osborn, 13 Tex., 306; Pitts *v.* Booth, 15 Tex., 454; Willis *v.* Gay, 48 Tex., 469; Peters *v.* Clements, 46 Tex., 123; Dorn *v.* Dunham, 24 Tex., 379, 380; Rodgers *v.* Burchard, 34 Tex., 453; Rorer on Jud. Sales, secs. 57–59, 459, 1095.)

*Sayles & Bassett,* for appellees.

I. A judgment rendered by the District Court on the 6th of April, 1860, was a lien on the land within the county, without the necessity of recording the same.

Plaintiffs relying upon the act of February 14, 1860, (Paschal's Dig.; arts. 3962, 3965,) as taking effect at the date of its passage, as erroneously stated by Mr. Paschal, it is proper in this statement to call attention to the facts showing the time when the act of February 14, 1860, took effect. The act of 1st December, 1849, fixing the time at which laws passed shall go into effect, (Paschal's Dig., art. 4576,) reads as follows:

"Every law hereafter made shall commence and be in force with the commencement of the sixtieth day after the day of the adjournment of the session of the Legislature at which such law may be passed, unless in the law itself another time for the commencement thereof is particularly mentioned." The Eighth Legislature adjourned on the 13th of February, 1860. By reference to the Session Laws of the Eighth Legislature, p. 117, it will be seen that the act of February 14, 1860, does not prescribe another time for its commencement, as is done in other acts of the same session which took effect from and after their passage. (See Laws Eighth Legislature, pp. 112, 115–117.)

Upon the foregoing statement the following minor propositions arise:

1. The declaration of the time when a statute will take effect must be made in a clear, distinct, and unequivocal provision, and cannot be helped out by any sort of intendment or implication. (Wheeler *v.* Chubbuck, 16 Ill., 361; Supervisors of Iroquois Co. *v.* Keady, 34 Ill., 293.)

2. The terms "hereafter," used in the second section of the act, and "from and after the passage of this act," used in the third section of the act, have effect only from the time that the act takes effect by its clear, distinct, and unequivocal provisions relating to the entire act, and not to particular sections. (Cooley's Const. Lim., p. 155, citing 34 Ill., 293, and 16 Ill., 361.)

II. By the sale made under the judgment in favor of Brown *v.* Testard *et al.*, and by the transfer by the Testards to Ennis of the unpaid purchase-money notes, and the subsequent conveyances from Ennis to the defendants, the title to the property in controversy passed to the defendants in this suit.

1. When land is conveyed and the deed shows that the vendor's lien is retained, the vendor holds the better title. (Roosevelt *v.* Davis, 49 Tex., 463; Peters *v.* Clements, 46 Tex., 119; Dunlap's Administrator *v.* Wright, 11 Tex., 597; Baker

*v.* Ramey, 27 Tex., 52; Monroe *v.* Buchanan, 27 Tex., 241; Caldwell *v.* Fraim, 32 Tex., 327.)

2. The title of Testard, the original vendor, passed by the transfer of the two purchase-money notes, and by the sheriff's sale, to Ennis, the vendor of the defendants in possession. (Baker *v.* Clepper, 26 Tex., 629.)

3. A plaintiff in an action of trespass to try title not having paid the purchase-money, cannot recover against his vendor, or those claiming under him, who are in possession. (Burgess *v.* Millican, 50 Tex., 397; Dunlap's Administrator *v.* Wright, 11 Tex., 597; Browning *v.* Estes, 3 Tex., 462; Whiteman *v.* Castlebury's Heirs, 8 Tex., 441; Baker *v.* Clepper, 26 Tex., 629.)

III. The plaintiffs' cause of action is barred by limitation.

The defendants entered into possession of the lots respectively claimed by them in December, 1870, under deeds duly recorded, and have ever since held peaceable and uninterrupted possession of the same, paying all taxes thereon. This suit was brought December 21, 1878.

1. A deed executed to a married woman during coverture for an onerous consideration, *prima facie* vests title in the community.

The lot in controversy, with others, was conveyed to Ophelia M. Baker, the wife of her co-plaintiff, Boulds Baker, by deed dated November 15, 1862, for the sum of $5,750 paid and secured to be paid by said Ophelia M. Baker. (Cooke *v.* Bremond, 27 Tex., 457; Kirk *v.* Navigation Co., 49 Tex., 213.)

2. The presumption in favor of the community can be rebutted by proof only as between themselves and those claiming under them with notice.

Ennis bought at sheriff's sale under execution against Testard and others. Finney and Compton bought from Ennis, without notice of any adverse claim or title, paying him $500 gold for each lot. There is nothing in the record showing that the deed from Simmons to Mrs. Baker was recorded.

(Smith *v.* Boquet, 27 Tex., 507; Smith *v.* Strahan, 16 Tex., 314; Cooke *v.* Bremond, 27 Tex., 457.)

GOULD, ASSOCIATE JUSTICE. — Appellants, Baker and wife, brought this action of trespass to try title to a lot in the city of Brenham, claiming it as the separate property of Mrs. Baker. Mrs. Baker's title was evidenced by a deed from W. W. Simmons of date November 2, 1862, Simmons having bought of A. Testard, from whom defendants also deraign their title, on September 3, 1860, executing his notes for an unpaid balance of the purchase-money, and receiving a deed which recited the notes. The title of defendants was under an execution sale had on January 5, 1869, by virtue of a judgment in the District Court of Washington county, in favor of John Brown against A. Testard and others, of date April 6, 1860, at which sale they claimed that C. Ennis became the purchaser, and subsequently conveyed to them. They further sought to protect themselves in the possession of the lots, asserting that Ennis became the holder of the unpaid purchase-money notes of Simmons, and by reason of that fact acquired and transmitted to them the vendor's lien of A. Testard, and other rights of Testard in and to the land. They also defended under the five years' limitation. The case was submitted to the court, and judgment rendered in favor of defendants.

Appellants assign as error several rulings of the court in the admission of evidence; but the statements in the brief of counsel are insufficient to enable us to see that the court erred, or, if it erred, that the error was material.

Mrs. Baker's title is superior to that of defendants, unless the latter and the judgment of the court can be supported on one of the three grounds set up by defendants, as stated above.

1st. Appellees insist that the John Brown judgment was a lien on the lot at the date of its rendition, although not recorded as required by the "Act to prevent judgments from becoming dormant, and to create and preserve judgment liens," passed February 14, 1860. This act, it is said, took effect, not,

as stated in Paschal's Annotated Digest in the margin, and as heretofore assumed by this court, from its passage, but sixty days after the adjournment of the Legislature. (Paschal's Dig., art. 3962; Boggess v. Howard, 40 Tex., 156.)  If this be not so, appellees' claim to a judgment lien must fail.  The act of February, 1860, provides that "no judgment hereafter rendered shall operate as a lien until filed in the office of the clerk of the County Court of the county where it is rendered, for registration."  Its third section reads: "From and after the passage of this act no sheriff, or other officer, shall sell real estate under and by virtue of an execution, without having previously obtained from the clerk of the County Court where the sale is made a certificate stating the number and amount of judgments against the defendant in execution of record in his office,"—proceeding to regulate the sale and the distribution of the proceeds on the basis of recorded judgment liens provided for in other sections of the same act.  In our opinion, the legislative intent appears on the face of the act, that it shall take effect from its passage.  That intention in regard to the third section is expressed so clearly and explicitly as to admit of no other construction.  That section is so connected with and dependent upon the others, as to make it impracticable for it to go into operation by itself.  Hence, we repeat, it clearly appears on the face of the act that it was intended to take effect from its passage.  In our opinion, the legislative intention is to be carried out, notwithstanding the former statute prescribing that "Every law hereafter made shall commence and be in force with the commencement of the sixtieth day after the day of the adjournment of the session of the Legislature at which such law may be passed, unless in the law itself another time for the commencement thereof is particularly mentioned." (Paschal's Dig., art. 4576.)  It is true that after this enactment it was usual to insert in statutes intended to take effect at once a clause providing "that this act shall take effect from and after its passage."  Examples may, however, be found where it is enacted that "from and after the

passage of this act" certain things shall be lawful, without any other or particular designation of the time when the act shall take effect. (Gen. Laws 12th Leg., 1st sess., p. 63.) In such cases, the legislative intent is clearly expressed, and is not to be defeated by reason of the failure to make the particular designation required by a former Legislature. The later act, being complete in its own provisions, must control. In a case where a statute is silent, or where its construction is obscure and doubtful, the rule prescribed would apply. We have seen that the statute under consideration is neither silent nor obscure. We know of no way of reconciling the provisions of the two statutes. The third section of the later act speaks in unambiguous language, "from the date of its passage," and therefore cannot be controlled by the former law.

The cases cited by counsel originated when there was a constitutional provision regulating the subject. In such cases the question is, not as to the legislative intent, but whether the act conforms to the constitutional requirement. The Constitution of Illinois directed that no public act take effect until sixty days from the end of the session, "unless, in case of emergency, the General Assembly shall otherwise direct." A statute prescribed that "from and after the 1st of March next it shall not be lawful," &c. It was held that it "did not direct that the act shall become an operative law before the time fixed by the constitutional provision quoted." (Wheeler *v.* Chubbuck, 16 Ill., 363.) The legislative intent, however clear, was inoperative unless expressed in the form prescribed by the Constitution.

2d. Appellees' second counter-proposition in support of the judgment is, that "by the sale made under the judgment in favor of Brown *v.* Testard and others, and by the transfer by the Testards to Ennis of the unpaid purchase-money notes, and the subsequent conveyances from Ennis to the defendants, the title to the property in controversy passed to the defendants in this suit."

Under this, three minor propositions are submitted, which,

with the authorities cited by counsel in support of each, are as follows:

"First minor proposition: When land is conveyed and the deed shows that the vendor's lien is retained, the vendor holds the better title. (Roosevelt v. Davis, 49 Tex., 463; Peters v. Clements, 46 Tex., 119; Dunlap's Administrator v. Wright, 11 Tex., 597; Baker v. Ramey, 27 Tex., 52; Monroe v. Buchanan, 27 Tex., 241; Caldwell v. Fraim, 32 Tex., 327.)

"Second minor proposition: The title of Testard, the original vendor, passed by the transfer of the two purchase-money notes, and by the sheriff's sale, to Ennis, the vendor of the defendants in possession. (Baker v. Clepper, 26 Tex., 629.)

"Third minor proposition: A plaintiff in an action of trespass to try title not having paid the purchase-money, cannot recover against his vendor, or those claiming under him, who are in possession. (Burgess v. Millican, 50 Tex., 397; Dunlap's Administrator v. Wright, 11 Tex., 597; Browning v. Estes, 3 Tex., 462; Baker v. Clepper, 26 Tex., 629.)"

It is to be remarked that the deed from Testard, as described in the statement of facts, is an absolute deed with warranty; and though it recites that for the unpaid part of the purchase-money certain promissory notes were executed, no express lien is retained to secure their payment. The cases cited by appellees are all cases where the vendor, though he makes a deed, recites in it that a lien is retained for the unpaid purchase-money, or takes at the time a mortgage or deed of trust to secure its payment. In the opinion of the writer, the decisions of this court show a broad line of demarkation between such cases and the one at bar, holding that the former are executory contracts, in which the superior title remains in the vendor, but classing the latter as executed contracts, in which the vendor has parted with his title, and has only the implied vendor's lien for the unpaid purchase-money. It is true, the expression has been sometimes used in opinions, that until the purchase-money is paid the superior title is in the vendor, but

it will, he thinks, be found that it has always been in discuss-ing a case where there was an express lien, or where the con-tract was executory.   The written argument of one of the counsel for appellants seems to concede appellees' third minor proposition, if limited to cases where none of the purchase-money has been paid.   The writer is unwilling to place the opinion of the court on appellants' second counter-proposition on other grounds, without, at the same time, denying the minor propositions submitted as to the superior title or right of possession of a vendor by such a deed as that made by Testard, the purchase-money being unpaid.

But we are unable to see that the assignees or holders of the purchase-money notes acquired, as such, any title or pos-sessory right to the lot, or anything more than the vendor's lien by which the notes were secured.   Nor are we able to see that Testard had, after conveying the lot to Simmons and parting with the purchase-money notes, any right or interest in the land subject to execution.   In our opinion, the judg-ment cannot be supported on the ground of rights vested in defendants as holders of the purchase-money notes, or as owners of whatever title Ennis acquired at the execution sale.

3d.  The third ground on which the judgment is supported is, that "the plaintiffs' claim is barred limitation."

Without pausing to investigate or pass upon the legal prop-ositions involved, we remark that it is fatal to the case at-tempted to be made for appellees if they had notice of Mrs. Baker's claim.   The defendants appear to have relied on Shep-hard's opinion as to the title they were getting, and might well be held chargeable with whatever notice or knowledge Shep-hard had.   Without intending to decide that they had notice of Mrs. Baker's claim, we remark that it does not appear that the court below passed upon the question, and that the absence of notice does not so appear as to justify us in assuming it. We think it evident that the case was tried and contested mainly on other grounds, and, under the circumstances, do not

think the judgment should be supported here on the ground of limitation.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 4, 1879.]

### ON MOTION FOR REHEARING.

*Sayles & Bassett* and *Shephard & Garrett*, on their application for rehearing.

I. The opinion and judgment are predicated on the proposition, that on the execution of the deed from Testard to Simmons the superior title would pass to the vendee, unless there was an express reservation in terms of the vendor's lien, notwithstanding it did affirmatively appear from the deed that the purchase-money was unpaid,—a proposition which, it is respectfully submitted, is unsupported by principle or by authority.

This proposition can be best treated by dividing it into minor propositions, and appending to these such authorities and suggestions as may seem pertinent thereto.

1. The right of the vendor to land sold is superior to that of the vendee until the purchase-money is paid. The right of the vendee depending upon the payment of the purchase-money, if the conveyance to him shows that the purchase-money is unpaid, he, by the express terms of the instrument, holds it in trust for the vendor. (2 Story's Eq. Jur., secs. 1219, 1220, 1224; Mackreth *v.* Symmons, 15 Ves. Ch., 336; Garson *v.* Green, 1 Johns. Ch., 308; Briscoe *v.* Bronaugh, 1 Tex., 330; Osborn *v.* Cummings, 4 Tex., 13; Yarborough *v.* Wood, 42 Tex., 91; White *v.* Downs, 40 Tex., 225; Cordova *v.* Hood, 17 Wall., 5.)

2. In all cases of the sale of land, the purchase-money being unpaid, the vendor's lien *prima facie* exists without any express agreement to that effect, and it lies on the purchaser, and those

claiming under him with notice of the fact that the purchase-money is unpaid, to show that the vendor agreed to waive the lien. (Parker County *v.* Sewell, 24 Tex., 238; Autrey *v.* Whitmore, 31 Tex., 627; Brown *v.* Christie, 35 Tex., 689; Wasson *v.* Davis, 34 Tex., 159, and authorities cited.)

3. The implications of law enter into contracts and form a part of their terms as fully as if expressed in words. (Bulkley *v.* United States, 19 Wall., 40; United States *v.* Babbit, 1 Black, (U. S.,) 61; 3 Pars. on Cont., 515; Self *v.* King, 28 Tex., 552; Rockmore *v.* Davenport, 14 Tex., 602.)

4. It follows as a corollary, from the foregoing propositions, that when the recitals in the deed show that the purchase-money is unpaid, and refer to and describe the outstanding notes, which notes themselves in express terms undertake to secure the unpaid purchase-money, the lien is retained by the very terms of the contract as fully and completely as if it had been reserved by express words to that effect in the deed.

It is true, as said in the opinion, that none of the Texas cases in which the proposition is announced, that where the purchase-money remains unpaid the superior title continues in the vendor, are cases in which the vendor's lien is merely implied; and it is also true that it does not affirmatively appear in any of said cases that such was the character of the lien. But it is equally true that this court has never, until now, held that such a result did not follow where the reservation of the lien arose by implication of law from the recital in the deed that the purchase-money remained unpaid, as well as where the lien was expressly reserved in terms.

Nor is any reason apparent why a distinction should exist in the two cases; for, as we have seen, the cases themselves are identical in principle. When the deed recites that the purchase-money remains unpaid, the reservation of the lien is implied and imputed, as matter of law, to the agreement of the parties. When, in addition to such recital, there is an express reservation, it is nothing more than what the law would declare to be the contract in the absence of any such

stipulation. The provisions of the law enter into every contract and become a part of it, whether expressly incorporated into it or not.

GOULD, ASSOCIATE JUSTICE.—Having duly considered the application for rehearing, the court adheres to the views expressed in the original opinion.

It is our opinion that the record so describes the deed from Testard to Simmons as to authorize the inference that it is an absolute conveyance, referring in its recitals to notes given for an unpaid balance of the purchase-money, but retaining no express lien for their payment; and we are all agreed that by that deed the title and right of possession passed from Testard to Simmons, subject only to the implied or vendor's lien to secure the purchase-money notes. It is deemed proper to explain that the original opinion on this subject was expressed as the opinion of the writer, because the court, not regarding the question as necessarily involved in the case, had not passed upon it, and not because of any difference of opinion on the question.

We do not regard the recitals in the purchase-money notes as amounting, either alone or in connection with the deed, to an express lien.

In regard to the defense of limitation, we do not think that the judgment of the court below can be supported on that ground. Thinking, however, that the court below had probably not passed upon that question, we have preferred, and still prefer, to leave it open.

The motion for rehearing is refused.

MOTION FOR REHEARING REFUSED.