[Opinion delivered June 24, 1880.]

---

## A. A. CASSIDAY ET AL. v. CHARLES C. FRANKLAND.

(Case No. 4210.)

1. VENDOR'S LIEN — SUPERIOR TITLE — LIMITATION.— The superior title remains with the vendor, where he sells land, taking purchase money notes, with lien reserved in the deed to secure their payment; and he may recover the land if the notes are not paid. If he transfers the notes, however, he no longer has any title in the land, superior or otherwise; nor does the superior title pass to the assignee or transferee, though the vendor's lien does, and the statute of limitations of four years will apply. Baker *v.* Compton, 52 Tex., 252.

(NOTE.— What becomes of the superior title? S. A. P.)

. APPEAL from McLennan. Tried below before the Hon. L. C. Alexander.

This suit was brought by Frankland for the recovery from Cassiday of two tracts of land in McLennan county. The petition is in the ordinary form of trespass to try title.

The defendants answered the general denial, and title acquired under the following circumstances: One R. P. Jones, of Brazoria county, being indebted to John Barnes, of London, in the sum of $100,000, and owning a large estate in lands, slaves and other property, conveyed this property to C. C. Frankland and Clinton Terry, as trustees, to secure the payment of this debt, with power to sell. The lands in controversy formed part of that estate. Jones dying soon after, John Barnes instituted suit against C. C. Frankland and Clinton Terry, the trustees, and Eleanor B. Frankland, the heir at law, and Ambrose Lanfear, in which a judgment was entered against C. C. Frankland, as executor and gen. eral heir and legatee of R. P. Jones, for $100,000, and that this amount should be a first and privileged lien upon all the estate of Jones, divesting all title in the property out of Jones' legal representatives and heirs, vesting it in Frankland and Terry, as trustees. The decree then proceeded to direct how the trust should be executed. Frankland and Terry were confirmed as assignees under the original trust deed, which was declared to be in full force, subject to the provisions of the decree. It then directed that all the property (including the land in dispute here) should be sold at public auction, upon the terms of ten per cent. cash and the balance of the purchase money in three equal payments of one, two and three years, with eight per cent. interest; the purchasers to execute their notes, payable to A. Lanfear, at Galveston, secured by mortgage to be retained on the property. The power to act is vested in Frankland and Terry, jointly or severally; and they were directed to execute deeds to the purchasers, valid and effectual in law to convey all the right, title, interest and claim of Jones and the defendants to the lands and property sold, but without warranty. It was further provided that the cash proceeds of all sales should be at once paid to the plaintiff, deducting commissions, etc.; and "that the plaintiff, or his attorneys of record or other agent for him, shall have the right to elect and take any of the notes and mortgages received as above on any of said sales, and credit the amount of the same" on

his debt, "in which case said assignees shall be released from all further attention to said notes, and accountability therefor." "But the said notes and mortgages which the plaintiff shall not so elect to take and receive shall remain subject to the control of the assignees, who shall collect the same at maturity, and pay over the several amounts as received by them to the said Lanfear or his order, at Galveston; and the notes and mortgages shall not operate as any credit or payment of the amounts thereof to said plaintiff, and shall not in any manner impair his claim and lien against the estate of said Jones, until the collection and payment of the proceeds to said Lanfear, except in cases of purchases in election to take said notes as hereinbefore specified."

Under this power, at a sale by Frankland and Terry, John A. Wharton purchased the land in controversy, paid the ten per cent. cash, and gave his notes for the balance of the purchase money, payable to A. Lanfear. In the deed to him is reserved a mortgage to said Lanfear to secure the payment of the notes, and the defendants derive their title by conveyances under John Wharton.

The defendants aver:

1. That plaintiff's claim is a stale demand, and barred by limitation.

2. That the notes of John Wharton to Lanfear were paid by services rendered by Wharton to the assignees as attorney.

3. That Clinton Terry died in 1862, and that the debt to Barnes not having been paid, Frankland has no right to sue.

4. That the Wharton notes were paid and delivered to and received by John Barnes or his agent, John B. Jones, as a credit upon his debt, and that plaintiff has no right of property therein, all the notes having been, in conformity with the decree, delivered to said Barnes or his agent.

This embraces the chief points of defense to which it is necessary to refer.

The plaintiff excepted to defendants' answer upon many grounds, upon which, however, no action was taken by the court. The cause was submitted to a jury. Upon the

trial it was admitted that both parties claimed title from a common source; that plaintiff held a deed to him and Clinton Terry, as assignees of Jones; that Terry died in 1862, and plaintiff is surviving trustee. The sale of the land and purchase by Wharton and deed to him were also admitted. The judgment of the district court of Brazoria, and the regularity of the proceedings there, were admitted. The deed of trust, assignment and the judgment of said court were introduced and read.

The defendants then introduced the deed from Frankland and Terry to Wharton for the land, which contains a mortgage to A. Lanfear to secure the payment of the notes for the purchase money, and it was admitted that defendants had a regular chain of title thereunder.

They further proved that John Wharton and Clinton Terry were law partners; that Wharton acted as attorney for the assignees, and that his services were worth $2,000; that John B. Jones was the agent and attorney of Barnes, and admissions made by him tending to prove that Wharton and Terry's claim against the Jones estate had not been settled.

The plaintiff Frankland's deposition was then read for plaintiff. He testified, among other things, to the sale of the lands under the deed of assignment and judgment, and "that we, the trustees, paid over and delivered to John B. Jones, who was the agent and attorney of John Barnes, all cash and notes received for the lands and other property of said trust estate." Appended to his deposition is a "summary statement of account," the last item in which is, "Amount of three notes of John A. Wharton in our hands, $576." There are other papers showing large sales; in the aggregate, $40,957.99, and afterwards $8,882.

He denies that Wharton was ever employed or rendered services to the trust estate, and all knowledge of any agreement that his notes for the land should be so discharged.

Coryell, for the plaintiff, proved that all the cash and notes received at the sales "were paid over and delivered to John B. Jones as the agent and attorney of John Barnes; that the

notes of Wharton were among the notes in the hands of Jones; that they were no evidences of payment, and were burnt up in a fire in his office."

This summary of the testimony is all that is material to an understanding of the case.

The judge charged the jury at great length. It is not necessary to recite it at length. He instructed them:

1st. That the deeds and admissions of the parties show that the legal title to the land was in plaintiff after the death of Terry in 1862.

2d. That the superior title to the land remained in plaintiff until payment of the notes, and unless the purchase money has been paid, or some fact equivalent thereto, as hereafter. in seventh charge mentioned, is proven, you will find for plaintiff.

3d. In a proceeding like the present there is no legal presumption of payment arising from any lapse of time, and no plea of limitation is an available defense.

Fourth, fifth and sixth charges relate to what might be considered evidences of payment.

7th. "If said notes were not paid, but you believe from the evidence that John Barnes, under the terms authorized by the deed and decree, took the notes as cash and credited Jones with so much as paid, thereby to that amount discharging the debt of Jones, the plaintiff cannot recover, and you will find for the defendants; but if you do not find for the defendants under this seventh charge, and do not find that the notes have been paid, you will find for plaintiff. If the notes have been paid you will find for the defendants."

Among the charges asked by defendants, and refused, was the following: "If you believe from the evidence that the notes executed by Wharton for said land were delivered to and accepted by said John Barnes or his attorney, Jno. B. Jones, as a credit upon the judgment of said Barnes, then you will find for defendant, Mrs. Mary Cassiday."

The jury found a verdict for the plaintiff, and there was judgment accordingly. Defendant moved for a new trial, which, being overruled, defendants appealed.

The assignments of error are:

1. The error in excluding testimony.

2. In refusing to give the charges asked by defendants.

3. The court erred in overruling the motion of the defendants for a new trial, and the grounds therein specified are here specially assigned.

4. The judgment of the court is not responsive to and supported by the pleadings.

The grounds set out in the motion for a new trial are:

1. The exclusion of testimony.

2. Error in the charge to the jury, and especially in stating that the legal title was in plaintiff after Terry's death, and also in the construction and legal effect of the deed from Frankland and Terry to Wharton.

3. The court erred in its third charge.

4. The court erred in its sixth charge.

5. The court erred in refusing to give to the jury the charges asked by the defendant.

6. The verdict of the jury is contrary to the law and the evidence.

*Herring & Kelley*, for appellants.

*Jennings & Dwyer*, for appellee.

Quinan, J.— It is unnecessary to discuss severally the different assignments, or attempt a reply in detail to the multitude of propositions and counter propositions, divided and subdivided under the various assignments. It would serve only to give a prolix and perhaps confused statement of our views. We choose rather to notice the prominent points taken, and which tend directly to a decision of the case.

In the first place, we are of opinion that the charge of the judge complained of in the second assignment of error "is erroneous." It is in the following words: "It is also admitted that the facts recited in both of said deeds are true. The deed of assignment, the decree of the district court of Brazoria county, and the admissions of the parties, show that

the legal title was in plaintiff after the death of Terry." We find in the transcript no admission of the defendants which would warrant the giving of this charge, and we think it was calculated, in connection with the instructions otherwise given, to mislead the jury. 2d. They were instructed also that "the conveyance to Wharton by Frankland and Terry vested in him, and those claiming under him, only an equitable right to obtain the legal title on the payment of the notes, and till then the legal and superior title to the land remained in Frankland, unless John Barnes, under the terms authorized by the deed and decree, took the notes as cash, and credited Jones with so much as paid, thereby to that amount discharging the debt of Jones to plaintiff." This instruction made essential to the divestiture of the superior title out of Frankland upon which he sought a recovery, " an absolute discharge of Jones' debt to Barnes, and put upon the defendants the necessity of proving it. Now we think this is manifestly an erroneous construction of the terms of the decree defining the powers of the trustee. It was the province of the court to construe it and to deliver its true meaning to the jury, and in our judgment there is no ambiguity about it upon this point. Conceding (because it is unnecessary to this discussion) that the deed to Wharton did not vest the legal title in Lanfear, to whom the notes of Wharton, and the mortgage to secure them, were made, and that as a consequence of the notes remaining in the hands of Frankland and Terry for collection, the superior title continued there also, it would seem to be very clear that when the notes were no longer in the hands of Frankland and Terry, when they had parted with the possession of them, and were released from " all further attention to said notes and accountability therefor," that they no longer had any title, legal, equitable, superior or otherwise, in the land. The decree, by its terms, reserved the right to Barnes to take any purchase money notes he chose, and credit them upon his debt, and thereafter Frankland and Terry should no longer be accountable for them; but it reserved the right, also, to Frankland and Terry, and

it became their duty, to hold and control, and collect them, unless they were so taken. There is nothing in the deed or decree to authorize the assignees to deliver to Barnes the notes and mortgages on any other terms, and nothing giving any right to Barnes to take them upon any other terms. By the stipulations of the deed it is wholly immaterial whether Barnes ever collects the notes he elects to take. If he takes and receives them the assignees are entitled, of course, to a credit for them. They cannot be held accountable to him for what has passed out of their control and of which they have parted with the power to collect. The notes were payable, by Barnes' appointment, to Lanfear, as Barnes' trustee; and, while they remained in Barnes' possession and control, Jones' assignees had no power to collect them. And, on the other hand, passing into Barnes' hands, payable to his agent, and he having the possession and the beneficial interest in them, the mortgage, the vendor's lien, and every other incident belonging to them, went with them, and nothing remained in Frankland and Terry.

An examination of the decree will show that what is therein said as to the notes and mortgages not operating as a credit or payment "of the amount thereof to said plaintiff, and not in any manner impairing his claim and lien against the estate of said Jones, until the collection and payment of the proceeds to said Lanfear, except in cases of purchases in election to take said notes as hereinbefore specified," will show that this provision has reference, and can have reference, only to those notes and mortgages which remain in the possession and control of the assignees. It is absurd to suppose that Barnes could receive the notes and take possession and control of them, so depriving Frankland and Terry of the power to collect them, and, though the proceeds may never be collected and paid over to Lanfear, hold them accountable for them, and that, nevertheless, his claim and lien against the estate of Jones should not be in any manner impaired. Obviously this is not the fair construction of the decree. It contemplated an arrangement for the security of both parties. Barnes sought to collect his debt

through the sale of the property, and Jones' estate was interested in the sale of the property and that the proceeds should be faithfully collected and applied to the release of the incumbrance upon it. The duty and obligation of the assignees was to both parties. To the estate, that the notes and mortgages should not pass beyond their control, except in discharge of the debt, and to Barnes, that the property shall be speedily and advantageously sold and faithfully paid over. It would be a gross breach of trust, on the part of the assignees, to deliver the assets of their trust estate to the *cestui que trust,* without a corresponding release of the liability of the grantor.

We think, therefore, the court erred in the construction it put upon the terms of the conveyance and decree.

There was error also in overruling the motion for a new trial. The verdict was manifestly against the evidence.

From what we have said upon the proper construction of the conveyances and decree, it will be seen that if the superior title to the land remained in Frankland, and he could be entitled to recover the land in consequence, it could only be as the result of his retention of the notes given for the purchase money. To them attached the vendor's lien, and with them it went into whatsoever hands they passed. The owner of the notes owns the security. Frankland cannot have the superior title to the land, and Barnes the vendor's lien upon it. Nor can Frankland hold or set up any title to the land when he has parted with the legal title and the notes also given for the purchase money. And that Frankland and Terry have long since transferred the notes, and have no longer any title or interest in them, barred or unbarred, is proven by the plaintiff himself and his witnesses.

Frankland swears: " We, the trustees, paid over and delivered to John B. Jones, who was the agent and attorney of John Barnes, all cash and notes received for the lands and other property of said trust estate."

Holmes swears that all the cash and notes received at the sales were paid over and delivered to John B. Jones, as the agent and attorney in fact of John Barnes, and that the notes of Wharton were among them.

They were paid and delivered. Payment implies a corresponding credit. If they were paid to Barnes, his debt was reduced so much by payment, and the assignees must have credit for it. We must presume they did their duty; that they did not pay them to Barnes without a credit for them; and it is certain that Barnes, by receiving them as a payment, acquired the absolute title to them, and with them whatever right or interest attached to them in the land for which they were given.

So that Frankland, by his own proof, established the fact that he had no interest in this land when he sued for it, and had no right to recover it. It was absolutely necessary to his recovery that he should have and *own* the notes, that the consequence should attach of retaining; if he had it, the superior title to the land in him; and the burden of proof was on him to show this when it had been disclosed that the notes had passed once into other hands, and to negative the presumptions arising therefrom.

The remaining assignments it is unnecessary to consider. The charge of the judge upon the subject of limitation was altogether irrelevant until the ownership of the notes by Frankland was shown. If sued on by Lanfear or Barnes, the statute of limitation of four years would apply, and the doctrine of superior title would not apply; for, in our judgment, the superior title does not pass to the assignee or transferee of a purchase money note, though the vendor's lien does. See Baker *v.* Compton, 52 Tex., 252.

The owner of the notes, not the original payee, is not the owner of the land. A promissory note is not a sufficient conveyance of lands upon which it has a lien.

For the errors indicated in the charge of the judge, and that the verdict is against the evidence, we award that the case be reversed and remanded.

REVERSED AND REMANDED.