NEW ENGLAND LOAN AND TRUST COMPANY v. MARTHA J. WILLIS ET AL.

Delivered May 24, 1898.

**1. Superior Title in Vendor—Sale of Land Executory, When.**

The title to land does not pass to the purchaser under a deed absolute on its face which recites the execution of purchase money notes but without expressly reserving a lien, where the notes executed contemporaneously therewith recite the existence of the lien;—the title remains in the vendor the same as though the lien were reserved by the terms of the deed itself.

**2. Same—Transfer of Note and Superior Title.**

One to whom a vendor transfers a vendor's lien note and also his interest in the land for the purpose of giving him a prior right or lien thereon as against a balance due on the land, acquires the legal and superior title, and may maintain trespass to try title for the recovery of the land upon default in the payment of the note at its maturity, and the vendor or a subsequent assignee of his rights can not defeat such action upon the ground that the legal title is held in trust simply as security and can not be used offensively.

**3. Same—Vendor's Election to Rescind.**

The filing of suit of trespass to try title by a vendor of land upon default in the payment of the purchase money is an election to rescind the sale.

APPEAL from Hunt. Tried below before Hon. HOWARD TEMPLETON.

*Chambers & Bartlett,* for appellant.

*Craddock & Looney,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—This was an action brought by appellant, December 8, 1896, against Y. O. McAdams, J. M. Johnston, and the administrator and heirs of H. J. Willis, deceased, to try the title to 125 acres of land in Hunt County, Texas. Defendants in the court below, Y. O. McAdams and J. M. Johnston, filed disclaimers. The other defendants filed pleas of general denial and not guilty.

June 22, 1897, appellee Joe Chandler filed a petition of intervention, alleging that J. M. Johnston sold the land in controversy to H. J. Willis, the deed reciting the consideration to be $2500—$500 cash, one note for

$500, due November 1, 1891, and one note for $1500, due March 1, 1892. That some time in 1892, H. J. Willis borrowed $900 from appellant, giving a deed of trust on the land in controversy; that said sum was borrowed for the purpose of paying J. M. Johnston part of the balance due him on the $1500 purchase money note; that in order that appellant might have a prior lien on said land said Johnston transferred the $1500 note to appellant, together with all interest he might have in said land; that after paying said Johnston the sum of $900 borrowed from appellant, there remained a balance due from H. J. Willis to Johnston, for which said Willis executed his note for $1286 to said Johnston, bearing date February 11, 1891, due October 1, 1893, reciting that it was given in part payment of the purchase money for said land, and expressly reserving the vendor's lien. That thereafter said Willis died, and F. M. Newton was in due time appointed administrator of the estate of said decedent. That said Johnston after the appointment of said administrator, and within one year thereafter, presented his said claim, properly probated, to the administrator for allowance; that said administrator on August 19, 1895, rejected said claim. That Y. O. McAdams and H. W. Williams became the holders of said claim, holding the same as collateral security, and on —— day of ——, 1895, instituted suit in the District Court of Hunt County against F. M. Newton, administrator, to establish said claim. That afterward the debts for which said McAdams and Williams held said claim as collateral security were paid off, and said J. M. Johnston for a valuable consideration, transferred said claim to Joe Chandler, intervener, as collateral security and in trust to secure Craddock & Looney. That appellant had wholly failed to present its claim for said loan of money to the administrator for allowance as a claim against the said estate, and more than one year had elapsed since said administrator was appointed. Wherefore intervener, appellee Chandler, said that appellant had lost its priority, and prayed for judgment against said administrator for his said claim, with foreclosure of his lien on the land in controversy, that his lien be adjusted prior to the rights of appellant, and that appellant take nothing as to him, said intervener, and for his costs and general relief.

Appellant filed its first supplemental petition replying to said plea of intervention, containing the following exceptions: (1) That said petition in intervention shows that the court has no jurisdiction of the matters therein alleged. (2) Plaintiff specially excepted to so much of said petition of intervention as seeks in this action to fix said intervener's claim as a lien on the land in controversy or seeks to adjust any lien of the plaintiff and the lien of intervener, or seeks to establish the intervener's lien as superior to the rights of plaintiff, because the court has no jurisdiction of such matters, but that the same are properly adjustable in the probate court, etc. Said exceptions were overruled by the court.

November 15, 1897, judgment was rendered in said cause, that plaintiff therein (appellant) take nothing by its suit, and establishing said

intervener's notes as a claim for the sum of $2462.25 against the estate of H. J. Willis, deceased, and as a lien on the 125 acres of land in controversy, and foreclosing said lien on the land as against this appellant and all the defendants in the court below. It was ordered by said judgment that in so far as judgment was rendered against F. M. Newton, administrator, the same should be certified to the County Court of Hunt County for observance and enforcement; and further provided, that appellant should not by said judgment be in any way prejudiced from the prosecution of any claim it may have for money against the estate of H. J. Willis, deceased. From this judgment the appellant loan and trust company has duly perfected its appeal to this court.

*Opinion.*—Appellant in its second assignment of error complains of the judgment rendered by the trial court, in that the same is contrary to the facts and law, because the transfer to the appellant of the $1500 vendor's lien note, together with the interest of Johnston in the land in controversy, vested in appellant the superior title to the land, and judgment should have been rendered for appellant for the land as against the defendants and intervener.

The record discloses: That on the —— day of ————, 1891, J. M. Johnston conveyed to H. J. Willis 125 acres of land in Hunt County, being the land in controversy, for the consideration of $2500. Of this sum $500 was paid in cash, and the balance was evidenced by two promissory notes of H. J. Willis, payable to Johnston—the first note being for $500, due November 1, 1891, and the second for $1500, due March 1, 1892. The notes were recited and set out in the deed; and they further recited on their face that they were given in part payment of the purchase money for the land, reserving a vendor's lien on the land to secure their payment. These notes were not paid at their maturity, and in May, 1893, H. J. Willis borrowed from appellant $900, giving a trust deed on the 125 acres of land in controversy to secure the payment of said $900. This money was borrowed by H. J. Willis for the purpose of paying J. M. Johnston on the balance due him on the purchase money for said land, and was so applied by Willis. In order that appellant might have priority over J. M. Johnston in the payment of said $900 over the balance that might be due to Johnston by Willis on the purchase money notes, Johnston executed the receipt of the $500 note on the margin of the deed record, and also indorsed and transferred the $1500 note above mentioned, and a credit was indorsed thereon of $600, and also executed and acknowledged the written transfer of the said note and his interest as vendor in the land in controversy. After being paid the money borrowed by Willis from appellant, there remained due Johnston on the purchase money $1268, for which the first note offered by Chandler was given by Willis to Johnston, and dated back so as to be of the same date as the deed. That the second note introduced by Chandler was given by Willis to Johnston for the interest accrued on the first note down to October 1, 1893, and a credit to that effect was indorsed on the note for $1268.

After the execution of the above instruments, H. J. Willis died, in Hunt County, Texas, and F. M. Newton was appointed administrator of his estate, which administration is still open. Within the year J. M. Johnston presented the said notes, legally probated as provided by law, to F. M. Newton for allowance, and said claims were by said administrator rejected; and within the time allowed by law H. W. Williams and Y. O, McAdams, the then holders of said notes, filed suit on said notes in the District Court of Hunt County against said administrator; that the claims, after being presented and rejected as aforesaid, were transferred by Johnston to H. W. Williams and Y. O. McAdams to save them harmless against liability as sureties for Johnston, which suit was pending when appellant filed this suit, and is yet pending. The debt for which Williams and McAdams were sureties was paid off by Johnston, who thereupon transferred said notes to intervener, Joe Chandler. Appellant never presented its claim to the administrator of the estate of H. J. Willis for allowance.

It is insisted that there is no express lien reserved in the deed from Johnston to Willis to secure the payment of the two notes therein set out.

It has been held that a deed absolute upon its face containing covenant of warranty, which recites the execution of notes for the purchase money but discloses no lien, passes title of the property to the purchaser. If, however, contemporaneous with the execution of such deed, the vendee executes notes for the purchase money which on their face recite the purchase, and in terms declare the existence of a lien until the notes are paid, this will be as effectual to prevent the title from passing by the deed as though the lien was reserved by the terms of the deed itself. Mc-McKelvain v. Allen, 58 Texas, 383.

In this case, while the deed recites the giving of the notes in part payment of the land, it does not in express terms reserve a lien upon the land. The notes, however, recite that they are given in payment for the land, and expressly retain a lien thereon to secure their payment. Under such circumstances the notes and deed will be construed as one instrument, and evidence an executory contract to sell the land. McKelvain v. Allen, supra.

The superior title to the land remained in Johnston until the notes were paid. Willis having failed to pay the notes, in May, 1893, he borrowed from appellant $900 for the purpose of paying Johnston, and executed a deed of trust upon the same land to secure that sum. For the purpose of giving appellant priority over the balance due on said land, Johnston executed a receipt on the margin of the county record containing the record of the deed from Johnston to Willis of the payment of the $500 note therein recited. He also indorsed a credit of $600 on the $1500 note, and transferred the same, after being so credited, to appellant. He also executed and acknowledged a written transfer of the note and all his interest as vendor in the land to appellant. The intention of the parties was to give appellant the prior lien upon the land, and to effectuate this purpose Johnston conveyed the superior title to the land to appellant.

By his transfer of the note and all his interest in the land, Johnston conveyed the legal title to the land to appellant. White v. Cole, 87 Texas, 90.

Upon default being made in the payment of the note at its maturity, the appellant was authorized to maintain a suit of trespass to try title for the recovery of the land. White v. Cole, supra (see 29 S. W. Rep., 1148, for opinion of this court in same case) ; Hamblin v. Folts, 70 Texas, 132.

Appellee Chandler contends that the effect of the transfer of the note and legal title to the land by Johnston to appellant, and the receipt upon the record of payment of the $500 note, was to give appellant priority in the payment of its loan of $900; and that it holds the legal title in trust simply to insure and safeguard the payment of its priority, and can not use it offensively in an action of trespass to try title.

The transfer of the note from Johnson to appellant, after describing the note, also describes the land, and concludes: "To have and to hold the above described land note, together with all and singular the contract lien, vendor's lien, rights, equities, and interest in said land which I have by virtue of being the original vendor in said deed and the payee in said note, and the legal owner and holder of said note."

This transfer was duly acknowledged and recorded. It is not claimed that it does not recite the true contract between the parties. We are referred by appellee Chandler in support of his contention to the case of Wiggins v. Wiggins, 40 Southwestern Reporter, 643, decided by the Court of Civil Appeals for the Third District. In that case it was held that the grantee in a deed absolute, but which was intended to operate as a mortgage, could not recover possession in an action of trespass to try title after default in the payment of the purchase money and while the grantors are in possession, but his remedy is a suit to foreclose. In that case the grantee in the deed did not, under the facts of the case, have the legal title to the land, but only had a lien upon the property to secure his debt. Neither that case nor the other cases referred to by appellee sustain him in his contention.

Appellant's fifth assignment of error reads: "The court erred in rendering a money judgment in favor of intervener Chandler and establishing and foreclosing same against this appellant as a vendor's lien upon the land in controversy, because the evidence showed that if said intervener had any lien on said land it was second and inferior to the superior title of this appellant."

We think this assignment is well taken. We have already held that the appellant had the superior title to the land. Under this holding, the trial court should have rendered judgment for appellant for the land, and against the intervener on his plea of intervention, seeking to foreclose a lien upon the land.

The case having been tried by the court without a jury, this court will proceed to render such judgment as should have been rendered by the trial court. The judgment of the court below is reversed, and here rendered for appellant for the land.

The administrator has not appealed from, and does not complain of the judgment against the estate of H. J. Willis, deceased, establishing the claim against the estate, and that judgment is not properly before us for revision.

Judgment reversed, and rendered for appellant.

### ADDITIONAL CONCLUSIONS.

At the request of the appellee Chandler we file the following additional conclusions of fact:

The note executed by H. J. Willis to J. M. Johnston for $1500, dated February 11, 1891, retained a vendor's lien on the land sued for, and became due on March 1, 1892. This note, after being credited with $600 in May, 1893, was transferred by J. M. Johnston to appellant in consideration of $900 loaned by appellant to H. J. Willis, to be paid to J. M. Johnston. It was so paid, and as a further consideration Johnston transferred his superior legal title to the land sued for to appellant. There is no evidence in the record of the terms of the loan by appellant to H. J. Willis.

At the time of the transfer of the note to appellant the same was past due, and has so remained. H. J. Willis was in default on the note previous to and at the time of his death, and his estate was in default at the time of the institution of this suit.

The record does not show when appellant elected to rescind the contract of sale of the land by Johnston to Willis and assert its superior title, except in the filing of this suit, which was on December 8, 1896, which we find was such an election.

The record does not show the date of the granting of letters of administration upon the estate of H. J. Willis.

*Reversed and rendered.*