**BOOTY et al. v. O'CONNOR et al.   (No. 8743.)***

(Court of Civil Appeals of Texas. Galveston. Feb. 26, 1926. On Motion for Rehearing June 24, 1926. Motion for Further Rehearing Denied Oct. 7, 1926.)

**1. Vendor and purchaser �găⁿ95(2).**

Holders of vendor's lien might excuse failure to pay installments of interest without affecting their right as to subsequent defaults of purchaser.

**2. Vendor and purchaser ⟭⟮278.**

Extension of vendor's lien before expiration of four-year limitation under Rev. St. 1911, arts. 5694, 5695, as amended by Acts 1913, c. 123, §§ 2, 3, by deeds of trust is a proper method.

**3. Vendor and purchaser ⟭⟮278.**

Superior title of holder of vendor's lien, extended by execution of deeds of trust, is not barred under Rev. St. 1911, arts. 5694, 5695, as amended by Acts 1913, c. 123, §§ 2, 3, until the lien is barred.

---

⟭⟮For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused December 1, 1926.

**4. Vendor and purchaser ⬅⇒299(3).**

Appellant, not pleading that equities arose by improvements to prevent rescission of sale and recovery of land by vendor under superior title arising from retention of lien, might not invoke them.

**5. Vendor and purchaser ⬅⇒296.**

Appellants, admitting that purchase money for land had not been paid, and not offering to do equity with reference to it, might not defeat right of holders of vendor's lien to recover the land by showing valuable improvements.

On Motion for Rehearing.

**6. Vendor and purchaser ⬅⇒296—Holders of vendor's lien and of deeds of trust, who assigned second deed of trust to third party, held estopped from recovering the land as against the assignee.**

Holders of vendor's lien and of first and second deeds of trust, who accepted amount of second deed of trust from third party, and gave him assignment, making it subordinate to theirs only as to priority of payment, *held* estopped to rescind and take land under superior title.

**7. Vendor and purchaser ⬅⇒257.**

Dominating right or title over that going to vendee and his privies remains with the vendor as incident of express lien to secure purchase money when nothing has been done to impair it.

**8. Estoppel ⬅⇒52.**

One by language or conduct leading another to do what he would not otherwise have done may not subject him to loss or injury by disappointing the expectation on which he acts.

Appeal from District Court, Jackson County; John M. Green, Judge.

Trespass to try title by Wm. J. O'Connor, managing executor of Thomas M. O'Connor, and others, against Gertrude V. Booty, administratrix of E. F. Booty, R. E. Brooks, and others. Judgment for plaintiffs, and the defendants appeal. Reversed and rendered as to appellant R. E. Brooks on rehearing, and affirmed as to other appellants.

Proctor, Vandenberge, Crain, and Mitchell, of Victoria, and Woods, King & John, of Houston, for appellant Brooks.

John T. Vance and Rose & Sample, all of Edna, for appellants, Gertrude V. Booty, Mary Virginia Booty, and Few Booty.

J. T. Linebaugh, of Victoria, and H. W. Wallace, of Cuero, for appellees.

GRAVES, J. This suit was in regular form of trespass to try title to 160 acres of land in Jackson county, known as the J. M. Rosborough subdivision No. 31 of the Valentine Garcia grant, Wm. J. O'Connor, managing executor of Thomas M. O'Connor, and others, being plaintiffs, and R. E. Brooks, Gertrude V. Booty, administratrix of E. F. Booty, and others, being defendants; these named defendants— Gertrude V. Booty answering individually and as guardian of her minor children, as well as in her capacity as such administratrix—after general denials and pleas of not guilty, each separately filed limitation pleas to this effect:

"Defendant says that more than twelve months have elapsed since the amendment of article 5695, Revised Statutes, by the Act of 1913 before this suit was brought by plaintiffs; and further says that more than four years have elapsed since the due date of any vendor's lien note payable or assigned to plaintiffs, or either of them, as part of the original purchase price of the lands described in plaintiffs' petition, before the bringing of this suit; and defendant expressly pleads the one and the four-year statute of limitation against any effort of plaintiffs, or either of them, to recover the lands above described by reason of plaintiffs, or either of them, being the vendor, or assignee of the vendor of said lands."

Mrs. Booty then added averments, the purport of which may be stated in this way: That her deceased husband, E. F. Booty, bought the land in 1913, paying a large part of the consideration in cash, afterwards improving it at heavy expense from time to time until his death, not only making further payments on both principal and interest of unpaid purchase money to plaintiffs, but also renewing such indebtedness with them at higher interest rates than were stipulated in the original deed of conveyance to him; that plaintiffs, although at all times knowing of such payments, expenses, and outlay, never before this suit claimed any title to the land, but recognized E. F. Booty and herself, as succeeding to his rights, as the owners thereof, and at all times merely demanded of them the payment of such debts against it, wherefore they were now estopped to assert any claimed superior title to the land as against them, etc.

The defendant Brooks also further pleaded as follows:

"Specially answering herein, this defendant says that the claim of plaintiffs on which their asserted cause of action is based, if they have any such claim, which is not admitted, but expressly denied, is nothing more than the superior title of the vendor, and the plaintiffs are without any title to the lands described in their petition other than, if any, the title remaining in the vendor to secure the payment of the original purchase price, and in this connection defendant represents:

"That heretofore, to wit, on or about the 28th day of March, 1914, Wm. J. O'Connor, managing executor under the will of Thomas M. O'Connor, deceased, at that time claiming to hold the vendor's lien to secure four notes for $1,050 each, of date February 20, 1913, and due on or before one, two, three, and four years from date, respectively, bearing interest at 7 per cent. per annum from date until paid, accepted from E. F. Booty and wife, Gertrude Booty, a deed of trust to Jas. McDonald, trustee, for the use of said Wm. J.

---

⬅⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

O'Connor, executor, wherein it was agreed that the asserted vendor's lien indebtedness should be reformed and extended so that it should take the form of a note in the principal sum of $4,528.03, dated March 28, 1914, becoming due March 28, 1919, and bearing interest from date until paid at the rate of 8 per cent. per annum, payable annually.

"That thereafter, on or about the 5th day of October, 1918, the said Wm. J. O'Connor took from the said E. F. Booty and wife a deed of trust on the premises described in plaintiff's petition, wherein it was agreed that there should be given, in lieu of the note last above described, a note in the principal sum of $4,-890.27 of date October 5, 1918, becoming due October 5, 1923, the said reformed note and deed of trust being accepted wherein the said E. F. Booty and wife, Gertrude Booty, conveyed the lands described in plaintiffs' petition to L. W. O'Connor, trustee, for the use of Wm. J. O'Connor, executor, and the said deed of trust providing that all liens of the former deed of trust should remain in full force and effect to secure the note last above described.

"That thereafter, on or about the 20th day of January, 1920, the said Wm. J. O'Connor, executor as aforesaid, loaned E. F. Booty and wife, Gertrude Booty, the sum of $4,500 in addition to the moneys represented by the notes above described, for the purpose of enabling the said E. F. Booty and wife, Gertrude Booty, to pay $800 as taxes against the lands in this subparagraph hereafter described, and $650 for material to be used in the construction of improvements on said lands, and approximately $3,000 further, for which the said Wm. J. O'Connor took and accepted a note in the principal sum of $4,500, and to secure which the said Wm. J. O'Connor took from the said E. F. Booty and wife a deed of trust to L. W. O'Connor, trustee, for the use of Wm. J. O'Connor, executor, of date January 20, 1920, conveying to the said trustee the properties in Jackson county, Tex., described as follows, to wit: [Among other property the following:] Subdivisions in the Valentine Garcia four league grant as said subdivisions are shown upon a map and plat made by L. A. Gueringer of certain lands formerly owned by J. M. Rosborough in said Valentine Garcia grant, said map and plat being of record in volume 10, page 268, Deed Records of Jackson county, Tex., and here referred to for a more particular description and a better identification of said subdivisions in this paragraph enumerated:

"(A) The entirety of subdivision No. 1, containing 213$^1/_{10}$ acres of land.

"(B) The entirety of subdivision No. 10, containing 160 acres of land.

"(C) The entirety of subdivision No. 18, containing 160 acres.

"(D) The entirety of subdivision No. 26, containing 127$^3/_{10}$ acres.

"(E) The entirety of subdivision No. 31, containing 160 acres.

"(F) The entirety of subdivision No. 32, containing 187$^3/_{10}$ acres, and 279½ acres out of R. Musquiz 5½ league grant—the said deed of trust further providing: 'The lien fixed and created by this deed of trust is a second lien upon all of the hereinabove conveyed property, there being at the time of the execution of this deed of trust existing deed of trust on the several tracts of land securing the payee in 'the hereinabove described note in the payment of indebtedness secured against the several tracts hereinabove conveyed in trust.'

"That thereafter, on or about the 21st day of September, 1921, after default in interest due the said Wm. J. O'Connor, executor on each and all of the notes above described, this defendant, for the purpose of enabling E. F. Booty to pay the taxes due against the mortgaged land, to take up the $4,500 second lien note in full, and to pay all past-due interest on the notes, on all of the above-described lands, and all held by the said Wm. J. O'Connor, executor, and to avoid a foreclosure, which was threatened by the said executor, in accordance with an agreement between the said Wm. J. O'Connor, executor, R. E. Brooks, and E. F. Booty, and relying on the agreement and extension hereinafter set out, loaned the said E. F. Booty sufficient money to pay the past-due interest on all of the notes against the above-described lands, including the notes above described, and to pay all taxes due against the said land, and further paid the said Wm. J. O'Connor the sum of $4,500 for transfer without recourse of the second lien note above described, and the said E. F. Booty, with the moneys so loaned to him by this defendant, paid all amounts of interest due against all of the above-described lands to the said Wm. J. O'Connor, executor, and all of the taxes due against all of the above-described lands; and, in consideration of said payments, and of the payment to said Wm. J. O'Connor of the said sum of $4,500 by this defendant, the said Wm. J. O'Connor sold and assigned to this defendant the note for $4,500 above described, and the deed of trust to secure the same; said assignment among other things providing:

'That said deed of trust hereinabove referred to and herein assigned creates a blanket lien upon some eight parcels of land in Jackson county, Tex., one parcel of land in Victoria county, Tex., and, in making this transfer and assignment of the lien created by the deed of trust aforesaid, the lien of said deed of trust is here declared to be secondary to, and inferior to, the liens described and defined and fixed by nine deeds of trust executed to L. W. O'Connor, trustee, to secure Wm. J. O'Connor, managing executor under the will of Thos. M. O'Connor, deceased, in the payment of nine several notes, and in making this transfer and assignment grantor distinctly limits the lien of said deed of trust here assigned so that said lien is a lien secondary to the lien of said nine deeds of trust on said nine several parcels of land to the extent of the principal of said nine notes and the interest to accrue on said nine notes from the 1920 maturities of said interest on the principal of said notes and any and all future interest to accrue on said nine notes and all interest on past-due interest on said nine notes, and reserves the right to extend the time of payment of any interest that is now due or may become due on said nine notes, or any of them, and to enter into agreement with the said E. F. Booty and his wife, or E F. Booty alone, to receive from the said E. F. Booty interest at the rate of 8 per cent. per annum on all past-due interest that may accrue on said nine notes, or any of them, and to grant such extension and to charge interest

at the rate of 8 per cent. per annum on all past-due interest and to become due on said nine notes, or any of them, without consulting the said R. E. Brooks; and any extension of the indebtedness represented by the note here now assigned shall contain a provision recognizing the right of grantor herein to extend the payment of interest, and to charge interest at the rate of 8 per cent. per annum on all past-due interest on said nine notes or any of them'; that E. F. Booty is dead, and his estate is insolvent.

"Wherefore, by reason of the premises, this defendant says that plaintiffs affirmed the sale and waived their right to rescind for breach, and elected to rely solely on their liens, and are estopped to recover the lands above described, and are estopped to assert as against this defendant their supposed vendor's superior title to the lands above described."

On conclusion of the evidence, both sides requested peremptory instructions, that of plaintiffs being granted, and judgment in their favor for the land followed. The defendants have appealed.

The controlling question presented by the cause is whether or not the plaintiffs below, in bringing their suit, were at the time in position as against the appealing defendants to assert a superior title to the land by virtue of being the holders of the original and outstanding vendor's lien against it. A statement of what are deemed the material facts involved will aid in its solution.

With only one interpolation by ourselves reciting the giving of the second mortgage deed of trust by Booty and wife on January 20, 1920, this much is quoted from the brief of appellees in this court as correctly reflecting the facts so far:

"The land in controversy was conveyed by J. M. Rosborough to E. F. Booty by deed expressly retaining a vendor's lien to secure purchase money notes, the deed bearing date of February 20, 1913. Booty gave to Rosborough four vendor's lien notes for $1,050 each, due on or before February 20, 1914, 1915, 1916 and 1917, respectively, which notes were indorsed to plaintiffs, and Rosborough conveyed his superior title reserved in said deed to plaintiffs (appellees) March 28, 1914. On the same day Booty and wife executed a deed of trust on the same land in favor of plaintiffs to secure the payment of the amount due on those four vendor's lien notes, which was by the deed of trust extended to mature March 28, 1919, and consolidated into one new note for the sum of $4,528.03, maturing on the date last named; the new note reciting that it was given as a substitute for, and in lieu of, the four original vendor's lien notes, the new note being copied in the deed of trust. The deed of trust further recited that the original vendor's lien retained in the above-mentioned deed was acknowledged 'to exist in full force and unimpaired to secure the $4,528.03 note described in this deed of trust, and this deed of trust and the remedies herein given are cumulative and additional ·to the rights and remedies incident to the securing of said four original notes. Said four $1,050 notes, and the lien securing the same, have been taken over by Wm. J. O'Connor, managing executor as aforesaid, in his representative capacity, at our special instance and request, and with the distinct understanding that he be given the note described in this deed of trust and this deed of trust, and that he be subrogated to all of the rights of the original holder of said four $1,050 notes.'

"On October 5, 1918, Booty and wife gave a new deed of trust to plaintiffs (appellees) of that date on the same land securing a note executed by them to plaintiffs for $4,890.27, due October 5, 1923, with interest at 7 per centum per annum. This note recited that it was given in lieu of, in substitution for, and in extension of, the above-mentioned note for $4,528.03, and that the maker acknowledged that the lien defined and fixed in the deed of trust of March 28, 1914, remains in full force and effect, and the deed of trust contained recitals to the same effect, and a provision that 'a release of this deed of trust shall be construed to be a release of said former deed of trust and of all liens acknowledged to be kept alive and in force and effect to secure the payment of' said hereinabove described note.' At the time of suit and of trial the principal of this last-mentioned note was wholly unpaid, but it was credited with interest paid to October 5, 1920, and interest on interest paid to September 19, 1921. This note was offered in evidence by plaintiffs at the trial. Plaintiffs also offered in evidence the four original vendor's lien notes for $1,050, each given by Booty to Rosborough, which were indorsed by the latter to plaintiffs.

"On January 20, 1920, E. F. Booty and wife executed a second mortgage deed of trust covering the premises covered by the deed of trust described in the preceding paragraph and other premises to secure a note of even date in the principal sum of $4,500, given for taxes and other purposes, bearing 8 per cent. interest from date, the said deed of trust, among other things, providing:

" 'The lien fixed and created by this deed of trust is a second lien upon all of the hereinabove conveyed property, there being. at the time of the execution of this deed of trust existing deed of trust on the several tracts of land securing the payee in the hereinabove described note in the payment of indebtedness secured against the several tracts hereinabove conveyed in trust.' "

On September 17, 1921, after some previous communication between the parties, defendant R. E. Brooks sent to plaintiffs, by letter of that date, cashier's check for $9,316.77, and in this letter instructed plaintiffs where to apply that payment, and stated that the following week he would be in Victoria and pay the balance due, and, when that was done, he wanted plaintiffs to assign and transfer to him (defendant) the note for $4,500, dated January 20, 1920, executed by Booty and wife, and then held by plaintiffs. Later Brooks went to Victoria and paid the balance, but he did not get the $4,500 note on that occasion.

Thereafter, on September 21, 1921, the plaintiffs transferred and assigned without

recourse to R. E. Brooks the $4,500 note referred to and the second lien deed of trust so securing the same; the assignment containing among others these recitals:

"The said deed of trust hereinabove referred to and herein assigned creates a blanket lien upon some eight parcels of land in Jackson county, Tex., and one parcel of land in Victoria county, Tex., and in making this transfer and assignment of the lien created by the deed of trust aforesaid the lien of said deed of trust is here declared to be secondary to, and inferior to, the liens described and defined and fixed by nine deeds of trust executed to L. W. O'Connor, trustee. to secure Wm. J. O'Connor, managing executor under the will of Thos. M. O'Connor, deceased, in the payment of nine several notes; and in making this transfer and assignment grantor distinctly limits the lien of said deed of trust here assigned so that said lien is a lien secondary to the lien of said nine deeds of trust on said nine several parcels of land to the extent of the principal of said nine notes and the interest to accrue on said nine notes from the 1920 maturities of said interest on the principal of said notes and any and all future interest to accrue on said nine notes, and all interest on past-due interest on said nine notes, and reserves the right to extend the time of payment of any interest that is now due, or may become due, on said nine notes, or any of them, and to enter into agreement with the said E. F. Booty and his wife, or E. F. Booty alone, to receive from the said E. F. Booty interest at the rate of 8 per cent. per annum on all past-due interest that may accrue on said nine notes or any of them, and to grant such extension, and to charge interest at the rate of 8 per cent. per annum on all past-due interest due and to become due on said nine notes or any of them without consulting the said R. E. Brooks; and any extension of the indebtedness represented by the note here now assigned shall contain a provision recognizing the right of grantor herein to extend the payment of interest, and to charge interest at the rate of 8 per cent. per annum on all past-due interest on said nine notes or any of them.

"At the time of executing this assignment the interest on all of said nine notes had been paid to the 1920 interest maturity dates thereon and interest on interest on sums accruing as interest to 1920 interest maturity dates, leaving due upon the notes held by grantor herein the principal of said nine notes and interest, and interest upon interest, accruing from 1920 interest maturity dates on said nine notes."

At the time this second lien trust deed was executed by Booty and wife, January 20, 1920, the plaintiffs had already both purchased the Rosborough original vendor's lien notes, and extended them for the Bootys. The negotiations through which defendant Brooks became the owner of this trust deed and of the $4,500 note took place during August and September of 1921 mainly between himself and McDonald for plaintiffs. During that period the Bootys were in arrears for over two years' interest on the last renewal of these Rosborough notes, evidenced by the above-described note for $4,890.27, and the plaintiffs finally, on August 29, 1921, demanded that they pay off all interest and taxes due up to September 1, 1921, as well as the second lien note in full for $4,500, but they did not declare the vendor's lien indebtedness standing back of these accumulations they thus required paid due on account of the nonpayment of interest thereon. On the contrary, when defendant Brooks, on September 21, 1921, came to Mr. Booty's aid, and met their demands by paying the amounts so required, they extended the interest on this prior vendor's lien debt, which did not mature until October 5, 1921, to October 5, 1923.

The original Rosborough vendor's lien-notes and all extensions of and substitutes for them thereafter given, provided that default in the payment of any interest installment when due should, at the election of the holder, mature the whole of the indebtedness, thus giving the holders the unexercised option just referred to.

In these circumstances R. E. Brooks became the owner of the $4,500 note and its accompanying second lien on the land, which the quoted assignment thereof from the O'Connors placed in him. At that time the original purchase-money indebtedness, for which the latter held the superior title, was not due, nor was it to become so for more than two years, having been previously extended of record to mature October 5, 1923, by the above-mentioned renewal trust deed of October 5, 1918. Nothing that passed concerning this second lien between the parties here litigant, by their correspondence or otherwise, unless that be the import of this assignment thereof to Brooks when construed in relation to the other written instruments catalogued, evidenced any intention or understanding between them that any right or remedies of the O'Connors under their then outstanding vendor's lien—which was first in time and first in right—were being thereby affected, waived, or impaired. On the contrary, both seem to have plainly understood otherwise; that is, that, in consideration of the payments then made by R. E. Brooks for Mr. Booty and his purchase of the $4,500 note, the O'Connors were foregoing their then existing right to declare their vendor's lien indebtedness against Mr. Booty due for unpaid interest by extending the interest for another year, and that Brooks was getting in unconditional subordination thereto a straight second lien on the land; their testimony on this trial so indicates, being as follows:

That of Judge Brooks:

"At the time I took this transfer of second lien from W. J. O'Connor I believed and relied on the fact that I was procuring a second lien subordinate only to the first lien in favor of O'Connor. At the time Mr. Booty came to me to help him out on this it would require about

$15,000 to be paid to them in order to meet Mr. O'Connor's demands, and that Mr. Booty had nothing except these lands, and O'Connor had a first and second lien on them. The second lien was for only $4,500, but under the terms of the deed of trust it authorized the owner of it to pay taxes on all of the land, and would be secured by the same deed of trust, so I felt that by taking over the second lien I would be secure so far as the $4,500 was concerned, and as far as taxes were concerned that I paid. The balance of it, that went to pay his interest, I would not be secured on, but to save Mr. Booty's land I was going to do that. So I took a transfer, which has already been offered in evidence. I did not examine the title at all. They had an abstract of title, and I relied upon them. I relied upon a good and valid second lien and claim, and I bought it and paid every dollar for it, principal and interest, and some $7,000 or $8,000 besides."

Mr. O'Connor's:

"I claim to have a valid first lien on this land. I have never claimed to have anything but a lien on this land. As to whether I ever intended to or did assert a right to rescind the contract and claim the land, will say I took that matter up with my attorney, and left it to his discretion. I do not remember the date when I first learned I had any such right as that, but it has been some time ago—along in January of this year, I think it was. Up until that time I did not know I had the right to rescind. After I learned that I had the right to rescind, I did not notify Mrs. Booty or Judge Brooks or any one connected with the case of my intention to rescind.

"The note referred to, for $4,890 I believe it was, which I testified had not been paid, and no interest paid on it since September 19, 1921, purports to become due on October 5, 1923. That note has not been extended at any time since then. To be candid about it, I really did not know I had the right to rescind. I am not a lawyer, and I did not know for some time that I had that right."

At the time this suit was filed the purchase-money vendor's lien notes as last extended had matured, there had been default in the payment thereof, and neither of the defendants either tendered the same or offered to do equity in relation thereto.

As appellants here, the defendants below make these contentions: (1) That the O'Connors, in the circumstances shown to have attended the transaction, not having expressly in the assignment of the second lien to Brooks reserved the right to rely upon their superior title as holders of the vendor's lien, thereby irrevocably affirmed as to such assignee the sales contract thereon with Booty, and could not thereafter, in reliance upon such superior title, rescind the sale and recover the land; (2) that the vendor's superior title retained in the deed to Booty was barred by R. S. arts. 5694, 5695, since the deed and accompanying notes on which it rested bore date of February 20, 1913, the last of the notes maturing on February 20, 1917, more than four years before the filing of this suit

on September 3, 1924; (3) that it was inequitable for appellees to recover the land, and they should have been restricted to a foreclosure of their lien, since Booty originally paid a considerable portion of the purchase price in cash, and thereafter made valuable improvements, the appellees having subsequently not only so extended their vendor's lien indebtedness (once at an increased interest rate), but also sold the second mortgage thereon; (4) "evidence of valuable improvements made on the land by the purchaser is material on the question of whether it is just and equitable to permit a rescission of the sale contract and recovery of the land by virtue of the superior title, instead of compelling the owner of such purchase-money indebtedness to resort to foreclosure."

[1] None of these positions are sustainable under the record, we think. The first one rests upon the assumption that at the time appellant Brooks purchased the second lien deed of trust note the appellees had elected to treat the vendee, Booty, as in default upon the pre-existing vendor's lien indebtedness for failure to pay the interest thereon; but, under the foregoing findings of fact, there had been no such election; hence the contention falls with the unsupported assumption. It was not an "election between two legal situations," with the consequence of destroying their outstanding superior title, for the appellees to merely agree in the way they did with appellant Brooks not to accelerate the maturity of the purchase-money indebtedness and to transfer to him, without recourse on them, the second lien note, nor did they thereby as to the former relegate themselves to the position of a mere lienholder or mortgagee. Not having declared the debt to which the superior title was an incident due, the bridge of a waiver of it was not crossed because never reached. They had the undoubted right to excuse the failure to pay any particular installments of interest without affecting their right as to subsequent defaults. Herman v. Gieseke (Tex. Civ. App.) 33 S. W. at page 1009.

If an affirmative assertion of title in the vendee and of a lien on the land to secure the purchase money, made in a suit to foreclose that remained many years on the court docket, did not constitute such irrevocable waiver of the superior title as to prevent the vendor from dismissing the action and still asserting the superior title, as was held in Walls v. Cruse (Tex. Com. App.) 235 S. W. 199, surely the mere choice in this instance of not exercising the option of declaring all the purchase money due in September of 1921, but, instead, of agreeing not to under the circumstances given, should not be given that effect.

In effect, appellants' sole argument is that the terms of the assignment to Brooks, in the circumstances, amounted to a contract with him on their part that the appellees would

waive the superior title they held down under Rosborough, and thereafter consider themselves on a parity with him as being lienholders only, theirs being first and his second, but an examination of the instrument itself repels that construction, and so clearly tends the other way, we think, that there can be no substantial doubt about it. It expressly recites that the lien it transfers "is here declared to be secondary to, and inferior to, the liens described and defined and fixed by nine deeds of trust executed to L. W. O'Connor, trustee, to secure Wm. J. O'Connor, managing executor under the will of Thos. M. O'Connor, deceased, in the payment of nine several notes." When reference is made back to those former deeds of trust, which include all the several renewals of the original vendor's lien indebtedness, they each in substance specifically describe, define, and fix that lien as still remaining in full force and unimpaired, and as being thereby brought forward in its original position of primacy.

Instead of constituting the concession claimed, this instrument seems to us to clearly safeguard every right, privilege, and remedy respecting the ever subsisting vendor's lien that appellees had so particularly "described, defined, and fixed" in all their preceding deeds of trust. The matter being thus a plain one of express contract, there is little or no need for the mention of supporting authority, but the case of Trust Co. v. Willis, 19 Tex. Civ. App. 128, 47 S. W. 389, writ of error denied, applies the principle here involved. There, as we have determined was the situation here, the vendor had done nothing amounting to an affirmance of the contract of sale, and the trust company, to which the vendor's lien had been conveyed, recovered the land by virtue of the superior title incident thereto.

We do not think the circumstance that this assignment employs the word "lien" rather than "superior title" or "vendor's lien" has any contrary significance, because it refers back to the former deeds of trust, where the kind of lien it was so carefully giving continuing precedence to was described and defined as the original vendor's lien retained in the deed to the land from Rosborough to Booty. Furthermore, our Supreme Court, in embedding the doctrine in our jurisprudence that an express lien, reserved in a conveyance of land to secure the purchase money, constituted the dominating title over that going to the vendee and his privies, interchangeably used the words "lien," "vendor's lien," and "express lien," as creating the superior title in the vendor. Baker v. Ramey, 27 Tex. 52; Peters v. Clements, 46 Tex. 115; Masterson v. Cohen, 46 Tex. 520; Roosevelt v. Davis, 49 Tex. 463; Baker v. Compton, 52 Tex. 252; Russell v. Kirkbride, 62 Tex. 455; Foster v. Powers, 64 Tex. 247.

[2, 3] The claim for the bar of four-year limitation under R. S. arts. 5694, 5695, being the second of these presentments here, has, under the facts already stated, been ruled adversely to appellants in the cases of Wier v. Yates (Tex. Civ. App.) 237 S. W. 623, and Templeman v. Kempner (Tex. Civ. App.) 223 S. W. 293, in both of which writs of error were denied. The vendor's lien in this instance was renewed and extended each time before the expiration of four years by the deeds of trust referred to, which this court in the Kempner Case held was a proper method of extending the lien, and the Yates Case determined that the superior title was not barred until the lien was.

The appellees, after pointing out that this suit was filed less than ten years after the first maturity of the last three of the original vendor's lien notes here involved, further answer these limitation pleas by questioning the constitutionality of these statutes as affecting contracts made prior to the amendment thereof by the Legislature in 1913, as was this one, citing the fact that the preceding article relating to the time within which the power of sale in deeds of trust might be exercised, article 5693, was held unconstitutional by the Commission of Appeals as to deeds of trust executed prior to the enactment of that amendment in the cases of Frank v. Bank, and Insurance Co. v. Wolters (Tex. Com. App.) 263 S. W. pages 255 and 259, respectively; the Supreme Court, however, in both cases since granted motions for rehearing, set aside all previous orders, withdrew them from the Commission of Appeals, and holds them now pending undetermined upon its docket. That article, 5693, is section 1 of the Acts of 1913, page 250, while those here under consideration are sections 2 and 3 of the same enactment, and, while we deem it unnecessary to decide the matter one way or the other, like considerations as to fundamental validity would seem equally applicable to them all. Of course, if invalid as to vendor's liens and superior titles outstanding at the time of their passage, they could in this instance furnish appellants no comfort of any sort.

[4, 5] The third and fourth propositions contending that equities arose in favor of appellants out of improvements made upon the land, and that the proffered testimony of Mrs. Booty as to the cost and value thereof should have been admitted, when applied to the issues actually made by the pleadings and evidence, raise inconclusive and immaterial questions. Appellant Brooks pleaded no such matters, wherefore was in no position to invoke them, and neither he nor Mrs. Booty, while both admitted that the original purchase money had never been paid to the appellees, offered in any way to do equity with reference to it. In such circumstances the making of improvements on the property, although valuable, is not sufficient to defeat the right of the holders of the vendor's lien to recover the land. Efron v. Burgower

(Tex. Civ. App.) 57 S. W. 306, and cases there cited.

It follows from these conclusions that the trial court's judgment should be affirmed. That order has heretofore been entered.

Affirmed.

### On Motion for Rehearing.

[6] After mature reconsideration, under able oral and written arguments for the parties, we have become convinced of error in the original disposition through our failure to sustain appellant Brooks' plea of estoppel. The matter was not then pressed as of controlling importance, the major contention being that the O'Connors, by failing to expressly reserve in their written assignment of the second lien to Brooks the right to rely upon the superior title accruing to them as holders of the vendor's lien, lost that right in so far as concerned him and could not by virtue thereof recover the land from him.

But this defense of estoppel was properly interposed below both by pleading and proof, was broader than this, and amounted, in substance, to the claim that the appellees, by accepting Brooks' money on September 19, 1921, and thereafter, in furtherance of the understanding then and thereby reached, on 21st day of September, 1921, delivering and assigning to him the $4,500 note, and the lien securing it, in the circumstances shown to have attended the transaction as a whole, estopped themselves from thereafter asserting as against him any right to recover the land as an incident to ownership of the original vendor's lien indebtedness; in other words, that they thereby in effect agreed with him that henceforth he and they would mutually sustain toward the lands the strict relation of lienholders or mortgagees only. with distinct specification that their indebtedness, so shorn of what might otherwise carry with it the rescission and recovery of the title right, would be first in time and his second.

[7] That position is now sustained. In doing so, however, it is not thought this court before indulged in any illusions concerning the present state of the law with reference to whether or not the dominating right or title over that going to the vendee and his privies remains with the vendor, as an incident of the express lien he reserves to secure the purchase money, until that is paid. When there has been nothing done to impair it, we think that right always subsists, term it what you will, and that the decisions appellants cite in this connection merely reflect that there has been a confusion in nomenclature only, not in substance.

A misapprehension of the purport of the undisputed evidence attending appellant Brooks' purchase of the $4,500 note and accompanying lien led to the former holding.

287 S.W.—19

A reconsideration of the record compels the finding that something did then and thereby pass between him and the appellees, which in equity and good conscience should prevent the latter from cutting out his lien entirely and recovering the land against him. It is this: There had been considerable introductory correspondence between them, and, after the O'Connors had by ultimatum demanded of Booty, with reference to all his indebtedness to them, that he (1) pay all taxes due against the land mortgaged; (2) pay off the second lien indebtedness in full, that is, the $4,500 note and interest; (3) pay all interest then past due and all interest on past-due interest to that date on the first mortgage indebtedness, Brooks by letter of September 17, 1921, wrote O'Connor as follows:

"I wrote you on September 8, 1921, in regard to Mr. Booty's indebtedness. In this letter I wrote you that Mr. Booty had accepted your proposition as set out in your letter to him dated August 29, 1921, and as confirmed in your letter of September 27, 1921, to me. In my letter of the 8th inst. I told you that Mr. Booty would use every effort and make every sacrifice to meet the conditions of your letter of August 29, 1921, and that I would notify you prior to October 5, 1921, whether or not he could meet the conditions of your letter. This is to inform you that Mr. Booty has made his arrangements and is now ready to comply with your requirements. I have assisted Mr. Booty in securing the money you demanded. The interference of mails by high water has delayed us. Mr. Booty and I have secured this money on the basis of my letter to you of the 8th inst., and to which I have had no reply, but which I presume is satisfactory to you. Upon that assumption I herewith inclose you cashier's check of the Farmers' State Bank of Georgetown, Tex., for $9,316.77.

"I want the amount of this exchange applied first to the interest due by Mr. Booty on his notes from October 5, 1918, to October 5, 1919, and from October 5, 1919, to October 5, 1920, and to the interest on this past-due interest from its maturity to the date of receipt of this payment. Any surplus left out of this exchange after payment of the above I want applied to the note for $4,500 dated January 20, 1920. One day next week I will be in Victoria with Mr. Booty, and will pay you the balance due on the $4,500 note and interest, and will also pay you all past-due taxes due on the land. When I pay the balance due on the $4,500 note, I will want you to assign and transfer it to me without recourse for my protection. This will pay up all of Mr. Booty's indebtedness to you that is now due. The interest on the note for one year from October 5, 1920, will be due on October 5, 1921. Mr. Booty will not be in position to pay this interest at this time, and will expect you to indulge him in the payment of this interest until October 5, 1922. Now I understand from your letter of August 29, 1921, to Mr. Booty and from his statements that all the above is satisfactory to you. If so, you are authorized to use the inclosed exchange as above set out, but, if you are not satisfied, for any reason,

then do not use this exchange, but hold it until I see you.

"Kindly write me immediately upon receipt of this letter if this is satisfactory to you, and, if so, go ahead and apply the exchange as above set out, and I will wire you in the next day or so what day next week I will be in Victoria to meet you and pay you the balance due under this arrangement."

To this, on September 19, 1921, O'Connor replied:

"We are in receipt of your letter of the 17th instant inclosing cashier's draft on the Farmers' State Bank of Georgetown, Tex., for $9,316.77 indorsed to me as managing executor.

"We have credited on account of this draft interest on the E. F. Booty note to 1920 interest maturity dates and interest on such interest to September 19, 1921, from such 1920 maturity dates. All the interest so credited aggregates the sum of $7,819.14. This leaves a balance on account of said draft of $1,497.63 to apply on the principal of the $4,500 note as of this date, and which when applied will leave due on said $4,500 as of this date $3,002.37. Because you expect a transfer of the note when you have paid the whole, we have marked thereon 'received on this note on account of principal from R. E. Brooks $1,497.63.'

"I am likely to be absent all this week after to-day, and am unable to say on what day, if any, I will be here. Should you come over you will find Mr. McDonald here."

"We thank you for your remittance in yours of the 17th."

Brooks went to Victoria on September 21st, saw the transfer and assignment of the $4,500 note and lien to himself bearing that date, and then paid the balance due on that note, as well as the taxes due on the land, receiving the instrument itself at Houston two days later by mail. The material recitals in this document have been copied in our former opinion, and need not be repeated here.

Appellant Brooks, in addition to the declarations originally quoted from him, testified that, in return for this $9,316.77, he so paid them on Mr. Booty's indebtedness (the latter being then in further large sums in debt to him for prior outlays on the same property), he understood and thought the O'Connors were giving him a lien on the lands subordinate to their own outstanding vendor's lien only with respect to priority of payment, that this was what the entire correspondence showed and what the recital in his letter of September 17th, "for my protection," meant, and that, had he then known or suspected that they would thereafter claim the right as against him, and especially without notice to him, on Booty's failure to pay this first lien indebtedness, to rescind the sale and recover back the land, he would not have paid them $1 of it. Mr. O'Conner at the time thought their transaction meant the same thing, because he plainly said so

in the testimony from him, quoted and misconstrued in the original opinion. Without reiterating the full text, among other details, he there stated that he had never claimed to have anything but a valid first lien on this land, did not know or suspect that he had any such right as rescinding the contract and claiming the land when he made the deal with Brooks and took his money—only learning of it from his own attorney in January, 1924, over two years later, and not then notifying either of the appellants of his intention to rescind. He did know, however, at the time he accepted the money just what Brooks would understand from the consummation of the negotiations, because he accepted without qualification the specifications as to what it was for the latter laid down, inclusive of this one: "When I pay the balance due on the $4,500 note, I want you to assign and transfer it to me without recourse, *for my protection.*" The italics are our own, indicating our conclusion that the recipient of this letter, in possession as he was shown to then be of all the facts about the matter, must have known and realized, as did its author, that the only protection Brooks could obtain in such circumstances —the O'Connors holding both liens—was the right to redeem the land from foreclosure under the first mortgage, and thereby save his investment in the second one against it; in other words, that this is what the parties knowingly contracted for at the time. It seems scarcely conceivable that Brooks would have so parted with his money without that understanding, especially as the second lien deed of trust he was getting expressly provided that its holder might pay the taxes on all the lands and be secured under it for that outlay, too, in addition to the $4,500 note therein described, and part of what he paid was for such taxes. The correspondence between the parties, as an entirety, we think requires the same interpretation.

When, therefore, they came to embody their mutual understanding thus arrived at in the formal assignment, they affirmatively provided that Brooks' debt and mortgage should constitute a lien on the land alongside that of the appellees; the only limitation or reservation expressed being that his lien should be secondary to theirs "to the extent of the principal and interest" on their debt. In the light of the undisputed evidence referred to, it becomes plain that the purpose and effect of these provisions was to merely postpone appellant's note and lien to the first lien the appellees held, thereby preventing any possibility of his participating ratably with them in any foreclosure under their debt, and not to still preserve to themselves an originally existing right to rescind the sale and recover the land, as we before concluded.

(287 S.W.)

In the case of Edwards v. Dickson, 66 Tex. 617, 2 S. W. 720, the Supreme Court, in quoting 2 Pomeroy on Equity, § 804, say:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is precluded, both at law and in equity, from asserting the rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy."

[8] The Supreme Court of the United States, in Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618, thus states the ground upon which equitable estoppel rests:

"The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted."

We think this principle rules the case at bar. From the uncontroverted proof it now seems to us to conclusively appear that the language and conduct of the appellees with reference to the relative status of the two liens they held led the appellant to buy the second one in reliance upon an understanding that it would be subordinate to theirs only in respect to priority of payment, and that, knowing then that he so acted, they should not now be permitted to disappoint his expectation.

It follows from these conclusions that the motion below of appellant Brooks for peremptory instruction in his behalf should have been granted, and that both courts have heretofore erred in not so holding. His motion for rehearing will therefore be granted, and, in so far as concerns him, the prior judgments of both courts will be reversed, and judgment will here be entered that appellees take nothing against him on their suit to recover the land. No motion for rehearing having been filed by the other appellant, our former judgment as to her remains undisturbed. This judgment shall in nowise affect the O'Connors' right as against Brooks to foreclose their prior lien.

Motion of appellant Brooks for rehearing granted, and trial court's judgment as to him reversed and rendered.